In the Matter of John Quincy BLACKMON, Jr.

and

Wilma Jean Blackmon, Debtor.

Bankruptcy No. 3–79–01998.

United States Bankruptcy Court, S. D. Ohio, W. D.

March 4, 1980.

Herbert Ernst, Jr., Dayton, Ohio, for trustee.

Fredric L. Sinder, Dayton, Ohio, for debtors.

## ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court on the debtors' motion to voluntarily dismiss their petition in bankruptcy. After careful consideration of evidence submitted at the hearing held on January 3, 1980 and of legal memoranda submitted by counsel, the Court finds the debtors' motion not well taken for the reasons set forth below.

## FINDINGS OF FACT

The debtors filed the subject voluntary petition in bankruptcy with this Court on November 20, 1979. The court appointed an interim trustee on November 27, 1979; said interim trustee became the trustee subsequent to the first meeting of creditors.

Schedules A–1, A–2 and A–3, respectively, of the petition state that the debtors have one priority claim in the amount of $9,000.00, seven secured creditors with claims amounting to $84,164.11 and six unsecured creditors with claims amounting to $5,055.08. Schedule B–1 lists the debtors' real property as consisting of nine separate parcels of land with a total value of $36,000.00. A majority of the debtors' interest in the real property is heavily encumbered by delinquent real estate taxes.

Schedule B–2 of the debtors' petition originally listed personal property valued at $10,350.00; this amount included six shares of the Kuhns Profit Sharing Plan. However, on January 3, 1980, the debtors amended Schedule B–2 by eliminating the shares in Kuhns Profit Sharing Plan and adding four shares of the "K" Employees Association, Inc., an investment plan, valued at $1,800.00. At that time, the debtors also amended Schedule B–2 to include United Benefit Life insurance policies numbered 222306, 3062413, 222307, 3164205 with a total cash value of $4,920.00, 19.28 shares of NIPCO Stock Purchase Plan valued at approximately $23.00 per share, unvalued retirement benefits for both husband and wife from the NIPCO Pension Plan and the United States Civil Service, respectively, and a possible tax refund based upon I.R.C. § 165(c), amount unknown.

The six shares of the Kuhn Profit Sharing Plan were also originally listed as exempt property in Schedule B–4. However, the January 3, 1980 amendment retracted that exemption and substituted the debtors' interest in the "K" Employees Association, the pension plans and all the cash value in the above described life insurance policies.

On January 4, 1980, the trustee filed objections to the debtors' exempting their interests in the "K" Employees Association and the NIPCO Pension Plan. At present, the exempt status of these assets is still in dispute.

The debtors filed the motion to dismiss their petition in bankruptcy on December 13, 1979. As set forth in a memorandum submitted by debtors' counsel, the debtors requested voluntary dismissal because they have discovered additional assets in their estate which they believe would allow them to satisfy a certain secured creditor. Their plan is to satisfy said creditor out of the proceeds of the newly discovered assets and then to refile a petition in bankruptcy within ninety days after their dismissal. The overall effect of the debtors' professed intention would be to give one creditor a preference over all other creditors involved in this matter. There is no reason to believe the general unsecured creditors would be assured any debt satisfaction.

## CONCLUSIONS OF LAW

■ While the debtor may choose to place himself in bankruptcy by voluntarily filing a petition with this Court to commence his case, he does not have the same degree of discretion in deciding whether he will terminate the proceedings once they are started. 11 U.S.C. § 707 cited in behalf of debtors, states that "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause, including . . . (1) unreasonable delay by the debtor that is prejudicial to creditors; and (2) nonpayment of any fees and charges required under Chapter 123 of title 28." The legislative history of this section provides some guidance for the Court. House Report No. 95–595 explains that the causes enumerated in § 707(1) and (2),

> "are not exhaustive, but merely illustrative. The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory Chapter 13, in lieu of the remedy of bankruptcy. The committee has rejected that alternative in the past, and there has not been presented any convincing reason for its enactment in this bill." *H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977), U.S. Code Cong. & Admin.News 1978, p. 6336; S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978).*

The Court believes this language is on point with the facts presented in the instant case and finds that the reasons offered by the debtors to justify a dismissal of their petition in bankruptcy do not constitute "cause" as that term is used in § 707.

■ The enactment of Section 707 does not preclude or preempt the application of equitable principles in the consideration of a request for dismissal instituted by the debtors. Certainly a trustee in bankruptcy may intervene both to assert the best interests of the general unsecured creditors and to obtain reimbursement or adequate security for any expenses incurred. See decision of this Court *In re Kidd, Case No. 22312 (at Dayton, 1965),* the rationale of which has been changed by the enactment of The Bankruptcy Code of 1978; but rather, bolstered by the provisions of 11 U.S.C. § 707.

It is, therefore, *ORDERED,* that debtors' motion to voluntarily dismiss their petition in bankruptcy is hereby DENIED and this case shall proceed accordingly.