In re Walter Guy UNDERWOOD, III, and Carolyn Jean Underwood, a/k/a Carolyn Jean Dennison, Debtors.

Bankruptcy No. 80–20066.

United States Bankruptcy Court, S. D. West Virginia.

Jan. 12, 1981.

Kenneth A. Windstein, Dunbar, W. Va., for debtors.

## MEMORANDUM OF OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

The Debtors seek dismissal of their joint voluntary petition filed March 7, 1980,

under chapter 7 of the Bankruptcy Code, in order to file a new petition including a new debt. Following the Debtors' meeting of creditors on April 14, the Trustee filed a report declaring that no assets were available for distribution to creditors, and a discharge hearing was then scheduled for September 16. However, on August 29, 1980, the Debtors filed a motion to dismiss their case. A supporting affidavit to the motion discloses that the Debtor, Mr. Underwood, was involved in an automobile accident on June 16, 1980, which resulted in a claim against him of $2,412.73. The Debtors contend that without a dismissal of the case, and subsequent filing to include this claim, they will be deprived of the fresh start Congress intended a bankruptcy discharge to provide. They argue that:

[A] cause for dismissal is "adequate" when the Reform Act's purposes are promoted by such dismissal. Applying this test to the instant case, it can be seen that no creditors will be prejudiced by a dismissal. The estate has no assets by which dividends may be paid to creditors. Secondly, dismissal here would comport with the Reform Act's intended purpose of providing a fresh start to the debtor. [Memorandum of Points and Authorities at 2.]

The Debtors further argue that where notice of the motion to dismiss is given and no party objects, the voluntary dismissal must be granted without any showing of cause, citing *In re Wirick*, 3 B.R. 539, 6 B.C.D. 354 (Bkrtcy.E.D.Va.1980), to support their position. *Wirick* is premised, however, on the fact that "[a]ll creditors were properly noticed and none objected." *Id.* 3 B.R. 539, 6 B.C.D. at 356. In the present case, the tort creditor is not identified and there is no indication that notice of the dismissal motion was given to it or any other postpetition creditors. As sought here, the dismissal request does not afford procedural due process to adversely affected parties. Neither the tort creditor nor any other postpetition creditor was given notice of the debtors' motion to dismiss. The only parties who received notice were those who might conceivably be benefited by a dismissal

while the parties adversely affected had no notice. Lack of objection to the dismissal request can thus scarcely be held to adequately support the motion.

Provisions of the Code and general equitable principles govern the granting of a dismissal in bankruptcy. Section 707 of the new Bankruptcy Code provides that:

The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors; and

(2) nonpayment of any fees and charges required under chapter 123 of title 28. [11 U.S.C. § 707.]

Section 59(g) of the Bankruptcy Act did not require a showing of cause for dismissal, but it did require "the bankrupt to file a list, under oath, of all his creditors, with their addresses," and the court would "cause such notice to be sent to the creditors of the pendency of such application and shall delay the hearing thereon for a reasonable time to allow *all* creditors and parties in interest an opportunity to be heard." 11 U.S.C. § 95(g). [Emphasis supplied.] Even without the requirement of a showing of cause, cases under the old Act held that a bankruptcy petitioner did not have the unfettered option of a voluntary dismissal. *In re Whitehead*, 583 F.2d 1104 (9th Cir. 1978); *In re International Airport Inn Partnership*, 517 F.2d 510 (9th Cir. 1975); *Stern v. Barnett*, 452 F.2d 211 (7th Cir. 1971); *Skelton v. Clements*, 408 F.2d 353 (9th Cir. 1969); *In re Keller*, 3 B.C.D. 1261 (W.D.Wis.1977). While it may be questioned whether section 707 applies to voluntary dismissals (*see In re Wirick, supra* 3 B.R. 539, 6 B.C.D. at 356), the debtor's burden of proof in obtaining a dismissal does not appear to be any lighter under the new Code.

The Code perpetuates the American contribution to bankruptcy law of a fresh start through the discharge of past indebtedness. *See* H.R.Doc.No.93–137, 93d Cong., 1st Sess. 62–64 (1973); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 384–85 (1977); S.Rep.No. 95–989, 95th Cong., 2d Sess. 98–99 (1978), U.S.Code Cong. & Admin.News 1978, p.

5787. Similarly, the limitation on the frequency of this fresh start is continued from the old Act. Section 14(c)(5) of the Act excepted from discharge those cases filed within six years of a prior bankruptcy discharge. 11 U.S.C. § 32(c)(5). The new Bankruptcy Code provides that:

The court shall grant a discharge, unless—

. . . . . . .

(8) the debtor has been granted a discharge under this section . . . in a case commenced within six years before the date of the filing of the petition; . . . [11 U.S.C. § 727(a)(8).]

Notably, the Code does not restrict the frequency of bankruptcy filings, only the frequency of bankruptcy discharges. Thus, a dismissal for the purpose of a new filing does no offense to any provision of the Code, but the expectation of a discharge of debts more than once every six years is beyond the relief provided under chapter 7.

Case processing burdens had prevented the discharge of the instant Debtors. Had a discharge been entered when the Debtors first became eligible, the tort debt would not have been included. 11 U.S.C. § 727(b). A new bankruptcy petition and schedule of debts would include the liabilities which had accrued in the gap period between the first and second petitions and, in effect, would result in a second discharge within a six-year period. This raises the prospect of carefully timed dismissal requests which delay the entry of the discharge while new debts are being added. Such a course inequitably prejudices the rights of those creditors who extended credit after the initial petition. It is not known who they are or whether they extended credit to the Debtors in confidence that the Debtors were soon to be unburdened of other debts. These post-filing creditors could attempt to have their debts excepted from the discharge, but this substitutes a significant legal burden in place of a routine credit decision. The filing—dismissal—filing sequence leaves creditors uncertain whether a stay remains in effect and whether pursuit of nonbankruptcy relief will be rendered futile by a new petition. This converts the extraordinary relief of the automatic stay into an injunction at the whim of the debtor. Rather than a protective device for the debtor, the enjoinder of creditor action which flows automatically from the filing of a petition could become an unintended bargaining weapon for debtors.

The filing of a bankruptcy petition substantially affects the legal rights of the parties and effects significant results which should not be undermined by an on again—off again option for the debtor. The debtor and his counsel must decide whether it is advantageous to seek bankruptcy relief. They must decide what form of relief should be sought and, equally important, when to file for relief. At the time and in the fashion the debtor chooses, one of the most pervasive injunctions known to the law is entered; an estate is created consisting of the debtor's assets; debts and creditors whose claims will be discharged are identified; the accrual of interest on claims is cut off. These are but several of the legal consequences of the debtor's petition. Their impact on creditors is significant and should not be expanded through prerogatives which the law does not clearly give a debtor.

Since a dismissal for the purpose of filing a new petition would result in an enlarged discharge, thus violating the limitations which Congress placed on chapter 7 relief, the Debtors' application should be denied. *In re Reynolds*, 4 B.R. 703, 6 B.C.D. 575 (Bkrtcy.D.Maine 1980); *In re Blackmon*, 3 B.R. 167, 6 B.C.D. 66 (Bkrtcy.S.D.Ohio 1980).

Finally, a debtor facing circumstances similar to those in the instant case is not without recourse under the Code. Relief under the provisions of chapter 13 results in a discharge notwithstanding the entry of a discharge under chapter 7 within the previous six years. Considering the administrative burden that would be generated through multiple filings and dismissals, the available alternate statutory remedies should be utilized rather than the avenue sought here.

It is recognized that a debtor's improper action, such as failing to pay filing fees, might result in a dismissal which, by a forthright request, is here being denied. To preclude such an anomalous result, unless the provisions of the Bankruptcy Code are not being subverted, a dismissal ordinarily will be entered with prejudice.