**In re Marshall KLEIN, d/b/a Devon Music Store.**

**Bankruptcy No. 80 B 2108.**

United States Bankruptcy Court, N. D. Illinois, E. D.

June 1, 1982.

Jay J. Glenn, Chicago, Ill., for debtor.

Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, Ill., for creditor.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

### I

This cause of action has arisen as a result of an objection by Chrysler Credit Corporation (hereinafter referred to as Chrysler Credit) to a claim for redemption filed by Marshall Klein, d/b/a Devon Music Store (hereinafter referred to as debtor).

Both parties have stipulated to the facts involved. On February 20, 1980, the debtor filed a Wage Earner Plan under Chapter 13 of the Bankruptcy Reform Act of 1978 (hereinafter referred to as the Bankruptcy Code). Subsequent to the filing of this petition, on March 28, 1980, the debtor purchased a new 1979 Dodge Ramcharger from a Dodge automobile dealership. The cash price of the vehicle was $12,345.50, and the unpaid balance (amount financed) was $5,055.50. The finance charge was $2,224.18, making the total payments to be received over a four year period $7,279.68. In connection with the purchase of this vehicle, the debtor executed a Retail Installment Contract, which in turn was assigned to Chrysler Credit. Chrysler Credit has a first secured lien on the vehicle under the terms of the Retail Installment Contract, as evidenced by the Certificate of Title issued by the State of Illinois.

The debtor's Chapter 13 plan was confirmed on August 1, 1980, but Chrysler Credit did not file its Proof of Claim until November 21, 1980. Chrysler Credit's se-

cured claim as of this date was $6,991.36. There was no objection to this claim, consequently it was deemed allowed. It appears that it is standard practice for the Chapter 13 trustee to automatically amend a Wage Earner's Plan to incorporate a post-plan claim whenever a post-plan claim is deemed allowed. Although the propriety of this practice may be somewhat questionable, this court will not address this issue since it was not raised by either party in this case. Chrysler Credit has received a total of $110.83 from the standing trustee on account of this allowed claim.

On May 22, 1981, the debtor, pursuant to § 1307(a) of the Bankruptcy Code, converted the Chapter 13 proceeding to a Chapter 7 proceeding. The debtor and Chrysler Credit have engaged in discussions relating to a Reaffirmation Agreement, but have been unable to reconcile the terms of such an agreement. Subsequently, on September 3, 1981 the debtor filed a Claim for Redemption pursuant to § 722 of the Bankruptcy Code. The debtor sought to redeem the vehicle in question by paying what he has alleged to be its current fair value: $4,400.00. Chrysler Credit has objected to the debtor's claim for redemption, alleging that the value of a secured claim should be determined as of the date of the debtor's petition and that the amount of its secured claim should be the value at which Chrysler Credit is able to dispose of the vehicle. Under a repurchase agreement with the Dodge dealership which originally sold the vehicle, Chrysler Credit would receive $6,168.11 plus $425.75 for reasonable attorney's fees.

II

Section 722 of the Bankruptcy Code allows a debtor to redeem qualifying tangible personal property from a lien securing a dischargeable consumer debt "by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien". 11 U.S.C. § 722. Consequently, two issues are raised by Chrysler Credit's objection to the debtor's claim for redemption: (1) at what point in time should a postpetition secured claim be valued, and (2) in what manner should a postpetition secured claim be valued.

Under Section 502(b) of the Bankruptcy Code, the amount of an allowed claim is determined as of the date of the debtor's petition. 11 U.S.C. § 502(b). Section 1305(b), however, provides that under a Wage Earner Plan postpetition claims "shall be allowed or disallowed under Section 502 of this title, but shall be determined as of the date such claim arises . . ." Insight into the meaning of this section is provided by the legislative history of Section 1305(b), which states that postpetition claims "are to be determined as of the date of allowance, rather than as of the date of petition." H.Rep.No.95–595, 95th Cong., 1st Sess. 428 (1977). Accord, S.Rep.No.95–989, 95th Cong., 2d Sess. 140 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787, 5926, 6383. Since a postpetition creditor can choose either to make his claim a part of the debtor's Chapter 13 plan or to preserve his claim in hopes of recovering against the debtor after the close of the case, see 5 Collier on Bankruptcy, § 1305.-01[2] (15th Ed. 1979), this court holds that a postpetition claim is allowed as of the date that the creditor elects to recover for his claim under the debtor's Chapter 13 plan, i.e., the date that the creditor files his Proof of Claim. Therefore, in the case at bar this court finds that Chrysler Credit's claim should be valued as of November 21, 1980, the date that Chrysler Credit filed its Proof of Claim.

The second issue raised by Chrysler Credit's objection is in what manner postpetition secured claims should be valued. Under the Bankruptcy Code, an allowed claim is secured up to the value of its collateral. 11 U.S.C. § 506. The amount of the claim over the value of the collateral is unsecured. 11 U.S.C. § 506(a). Since Chrysler's proof of claim was not objected to, the total amount of the claim is deemed allowed. In the Matter of Ruby Jeanette Clements, a.k.a. Ruby Jeanette, 11 B.R. 38, Bankr.L.Dec. ¶ 68.005 (Bkrtcy., N.D.Ga. 1981). As in Clements, this court must now

determine what portion of Chrysler's allowed claim is secured.

Chrysler Credit argues that the value of the collateral is the value which Chrysler Credit would receive under their repurchase agreement with the automobile dealership which originally sold the vehicle. The issue of whether a repurchase agreement fairly represents the market value of collateral is one of first impression in this district. It has, however, been litigated before the Bankruptcy Court for Colorado in *In re Stumbo*, 7 B.R. 939, 7 B.C.D. 130, 3 C.B.C.2d 640, Bankr.L.Dec. ¶ 67,759 (Bkrtcy.D.Col. 1981) (repurchase agreement represented the value of the collateral to the creditor) and *In re Beranek*, 9 B.R. 864, 7 BCD 522, 4 CBC 2d 347 (Bkrtcy.D.Col.1981) (repurchase value not conclusive evidence of collateral's value).

This court is persuaded that the weight of legal authority does not accept a repurchase agreement as a realistic method of valuing collateral. The repurchase agreement before this court is a contract between Chrysler Credit and a retail automobile dealership for both the unpaid purchase price of the vehicle and unmatured interest. The Bankruptcy Code disallows claims for unmatured interest. 11 U.S.C. § 502. Therefore, this court will not permit the incorporation of such interest in an agreement to repurchase in order to circumvent this prohibition.

Further, the repurchase agreement is not indicative of the value of the collateral on the open market. *In re Clements, supra; In re Beranek, supra; Chrysler Credit Corp. v. Cooper (In re Cooper)*, 7 B.R. 537, 7 BCD 24 (Bkrtcy., N.D.Ga.1980). As the court held in *Cooper*:

> The price at which a Chrysler dealer would be required (by a contract existing from time of original sale) to repurchase the automobile from Chrysler Credit reflect no true indicia of market value. The testimony of Chrysler Credit representatives is that its with-recourse guaranty or surety agreement with the dealer, whereby the dealer must repurchase the vehicle under a predetermined contractual formula, has no relation to the age, general condition, public demand and retail marketability of the vehicle.

*Cooper*, 7 B.R. 537, 539. The value of the collateral to Chrysler Credit Corp. due to its contractual arrangements represents the value of the collateral under the contract rather than the market value of the collateral. A secured creditor may not, together with the industry from which it is assigned its interests, create a mythical "market" via contracts whereby it forces a third party to pay more for collateral than it is worth. The obvious purpose of this arrangement is to artificially increase the redemption value and circumvent the legislative purpose of 11 U.S.C. 722.

This court finds that the more equitable means of valuing the collateral is through the NADA used car valuation publication for this region at the date of allowance of the claim. This generally accepted method for valuation represents the value of the collateral on the open market and is consistent with the intent of Congress in providing a debtor with the right of redemption.

This court therefore instructs the debtor to produce a verified copy of the valuation of this collateral in the NADA publication for the period including November 21, 1980, the date the claim at issue arose. The objections of Chrysler Credit are overruled and the debtor is permitted to redeem the collateral at the value so determined with appropriate adjustments for the vehicle's condition as of November 21, 1980.

Debtor's attorney will submit a draft order consistent with this opinion along with evidence of the valuation within 20 days.