**In re Harold William REEDER and Bertha Ann Reeder, Debtors.**

**Bankruptcy No. 85 B 05655 J.**

United States Bankruptcy Court, D. Colorado.

May 1, 1986.

Douglas E. Larson, Harshman, Deister, Larson & McBee, Grand Junction, Colo., for debtors.

Clark S. Spalsbury, Jr., Williams, Turner & Holmes, P.C., Grand Junction, Colo., for IntraWest Bank of Grand Junction.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on April 14, 1986, upon Debtors' motion, pursuant to 11 U.S.C. § 522(f), to avoid a nonpossessory, nonpurchase money security interest in tools of the trade held by the IntraWest Bank of Grand Junction ("IntraWest"). Debtors claimed that their medical equipment falls within the statutory exemption amount therefore the security interest should be voided. In-traWest objected to this claim due to an alleged lack of an ownership interest by Mrs. Reeder and an improper valuation of the collateral. A peripheral issue arose at the hearing in which IntraWest attempted to show bad faith on the part of the Debtors regarding their claimed exemptions for household goods and then arguing, by way of analogy, that Debtors' claimed exemptions in their tools of the trade were similarly tainted. However, that issue was not properly before the Court because IntraWest had no security interest in Debtors' household goods nor did they establish any values to the disputed household goods which would negate those claimed exemptions.

Accordingly, the sole issue to be decided was whether each Debtor could each individually claim the $1,500.00 exemption allowed for tools of the trade under C.R.S. § 13–54–102(1)(i), 1973 as amended. Essential to this issue is the resolution of two foundational questions: first, whether both Harold and Ann Reeder could each claim the $1,500.00 exemption allowed by Colorado law, and second, whether the Debtors' valuation of the property claimed as exempt is proper.

The Debtors filed a joint petition under Chapter 7 of Title 11 of the United States Code on September 26, 1985. Testimony at the hearing revealed that Dr. and Mrs. Reeder (a registered nurse) worked together as a medical team and jointly used the medical equipment in which IntraWest had a security interest. Mrs. Reeder testified that she did not receive a salary for her services but instead left monies due her in the practice in order to help the business. Since Mrs. Reeder both used the equipment and contributed her forgone salary to the practice, she claimed an ownership interest and the $1,500.00 exemption in these tools of the trade.

The first issue raised by IntraWest's objection involves an interpretation of the following sections of the Colorado exemption statute:

*Property Exempt* (1) The following property is exempt from levy and sale under writ of attachment or writ of execution:

(i) The stock in trade, supplies, fixtures, maps, machines, tools, equipment, books, and business materials of any debtor used and kept for the purpose of carrying on any gainful occupation in the aggregate value of fifteen hundred dollars;

Section 13–54–102, C.R.S.1973, as amended.

*Definitions.* As used in this article, unless the context otherwise requires:

(1) "Debtor" means a person whose property or earnings are subject to attachment, execution, or garnishment.

(2) "Dependent" means a person who receives more than one-half of his support from the debtor.

Section 13–54–101, C.R.S.1973, as amended.

IntraWest argues that subsection 102(1)(i) must be interpreted to permit only a $1,500.00 exemption on tools of the trade to be claimed by Dr. Reeder. This argument must fail. It disregards § 522(m) of the Bankruptcy Code, the Colorado Constitution and exemption statute, and case law.

Section 522(m) provides that § 522 applies individually with respect to each debtor in a joint case. As such, "each Colorado debtor whose property is subject to attachment or execution is entitled to claim his or her own exemptions in the statutory amount." *In re Ferguson,* 15 B.R. 439, 441 (Bankr.Colo.1981).

In addition to the Bankruptcy Code, the Colorado Constitution must also be examined. It decrees that "the general assembly shall pass liberal homestead and exemption laws." Colo. Const. XVIII, § 1. Construction of this provision and the state exemption statutes has also been liberal. *See, In re Hellman,* 474 F.Supp. 348 (Colo. 1979) and *In re Ferguson,* 15 B.R. at 441.

Moreover, case law on this issue supports this determination. Indeed it is basic to any right to exemption that the debtor have an ownership interest in the property claimed as exempt. *See In re Cunningham,* 5 B.R. 709 (Bankr.Mass.1980). Here,

Mrs. Reeder's ownership interest in the equipment arose from her daily use of it as well as her contributions to their medical practice. *Accord, Britt v. Britt,* 137 Colo. 524, 328 P.2d 947 (1958); *Lee v. Lee,* 133 Colo. 128, 293 P.2d 293 (1956); *Wigton v. Wigton,* 73 Colo. 337, 216 P. 1055 (1923).

■ IntraWest erroneously relied on the presumption in Colorado law "that the husband is the owner of the household goods when both spouses are living together, absent any evidence to the contrary." *Ferguson,* 15 B.R. at 441, for two reasons. First, and most importantly, this case concerns tools of the trade, not household goods. Secondly, there is abundant evidence to the contrary that Mrs. Reeder contributed to the practice itself, which rebuts the presumption. Therefore, given § 522(m), the law of the state of Colorado, and supporting case laws the Court overrules IntraWest's objection to Mrs. Reeder's claimed exemption in the tools of the trade.

■ This determination alone is not dispositive of the matter because IntraWest also objected to the Debtors' valuation of the medical equipment citing 11 U.S.C. § 506(a). This section, in part, provides "[s]uch value shall be determined in light of the purpose of the valuation ... or use of such property." Thus, IntraWest contended that the value of the equipment should reflect its replacement cost (or "going concern" value) to the Debtor which would be in excess of the $3,000.00 claimed exemptions. As support for this proposition, IntraWest cited *In re Stumbo,* 7 B.R. 939 (Bankr.Colo.1981).

This Court declines to follow the much criticized rationale in *Stumbo* and instead adheres to the better reasoned majority view as stated by *In re Cook,* 38 B.R. 870 (Bankr.Ut.1984) which interprets both 11 U.S.C. § 506 and § 1325. *Cook* involved a dispute over the valuation of an automobile with the creditor claiming that the debtor's replacement cost was the appropriate standard. Judge Clark rejects this premise by stating:

The purpose of collateral valuation under Section 1325(a)(5)(B)(ii) is to protect se-

cured claimants from loss by assuring that they will receive under the plan as much money, or its equivalent, as they would receive if they were permitted to sell the collateral in a commercially reasonable manner. (Citations omitted). *Replacement cost is not an appropriate standard.* (emphasis added).

*Id.* at 873.

He goes on to reason that "Section 506(a) ... is intended to place a value on the collateral equal to its value *to the creditor.*" (Emphasis original). *Id.* at 837–874. Since the creditor was not in the business of selling automobiles it is commercially reasonable to use the wholesale value on the date of the confirmation of the plan as the appropriate standard. *Id.* at 875. Applying this reasoning to the instant case, the Court finds that the Debtors' valuation of their collateral is reasonable. It is, therefore,

ORDERED that IntraWest's objection to the Debtors' claimed exemptions is overruled.