**In re Linda CROMPTON, Debtor.**

**Linda CROMPTON, Plaintiff,**

**v.**

**BOULEVARD MORTGAGE COMPANY, Defendant.**

**Bankruptcy No. 85–05312K.**
**Adv. No. 86–0527K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 9, 1987.

David Sambolin, Philadelphia, Pa., for debtor/plaintiff.

David H. Rosenfeld and Katherine McAlice, Philadelphia, Pa., for defendant.

James J. O'Connell, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

In this adversarial proceeding, the Debtor asks us to determine, pursuant to 11 U.S.C. §§ 506(a), (d) the extent of the secured claim of her mortgagee against her estate's interest in a residence which she purchased jointly with a man with whom she lives, but to whom she is not married. We have concluded, upon weighing conflicting expert testimony, that the full value of the residence in issue is $5,000.00 and that, since the Debtor owns the property with a person to whom she is not married, she does not and could not own the property as a tenant by the entireties, and that there-

fore the extent of the secured claim against her estate's interest in the premises can and should be reduced to one-half of the full value of the premises. We thus conclude that the extent of the mortgagee's secured claim against her estate's interest in the premises is but $2,500.00, and the balance of its claim is unsecured.

Since this matter must be decided on the basis of disputed testimony concerning the value of the Debtor's premises, we are compelled to render our decision in the form of Findings of Fact, Conclusions of Law, and a supporting Discussion, per Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### FINDINGS OF FACT

1. The Debtor in this bankruptcy case filed on December 10, 1985, and the Plaintiff in this adversarial proceeding filed on June 17, 1986, (hereinafter referred to as "the Debtor") is LINDA A. CROMPTON, a young woman who is the mother of two (2) children, aged one (1) year and two (2) years, who resides with the father of her children, to whom she is not married, named MICHAEL KENNY, in the home in issue, located at 129 East Willard Street, Philadelphia, Pennsylvania 19134.

2. Mr. Kenny and the Debtor purchased the property from a former employer of Mr. Kenny for $13,500.00, in September, 1983, financing their purchase by means of a loan secured by a mortgage in favor of the Mortgagee and the Defendant in this proceeding (hereinafter referred to as "the Mortgagee"), BOULEVARD MORTGAGE COMPANY, by means of a mortgage insured by the Federal Housing Administration (FHA).

3. Mr. Kenny and the Debtor incorrectly assumed that the FHA–insured status of the mortgage guaranteed them a home with no serious defects. In fact, however, there were numerous defects, hidden and otherwise, in the home, including a leaking roof, a heater which broke down after about a week's use, and plumbing leaks in the kitchen and the bathroom, and numerous exposed wires, indicative of electrical problems, all of which the young couple have been financially unable to repair.

4. On May 6, 1986, Edward V. Graham, a real estate broker and appraiser in the City of Philadelphia for over twenty (20) years, personally inspected the home and appraised its value, on behalf of the Debtor, at $4,000.00. This figure was ascertained by estimating the value of the premises with necessary repairs, which he stated would still leave it in "inferior" condition, at $10,000.00, and deducting therefrom $6,000.00, as the cost to make the necessary roof, heater, ceilings, and plumbing repairs.

5. On October 4, 1986, Irving Geller, a qualified real estate broker and appraiser in the City of Philadelphia, prepared a written appraisal for the Mortgagee, in which he valued the premises at $8,000.00. This figure was arrived at by deducting $6,000.00 for necessary repairs from the average premises value of comparable premises of $14,000.00.

6. The conclusions of both appraisers must be adjusted because of shortfalls in their techniques and bias. The appraisal of Mr. Geller appears less reliable, because he made no adjustment for repairs to the heating unit and roof of the premises, which the Debtor presented credible testimony were badly needed. On the other hand, Mr. Graham's memory of the precise characteristics of the premises was hazy, he failed to produce a written report to support his findings, and the earlier date of his appraisal renders it an appraisal done farther from the significant time for determination of value, i.e., the date of confirmation of the Plan, than that of Mr. Geller.

7. The reasonable value of the premises, in weighing the foregoing testimony, is found to be $5,000.00.

### CONCLUSIONS OF LAW

1. As a joint tenant, but not a tenant by the entireties of the property, the Debtor is entitled to have the interest of her estate in the property in issue valued at half of the value of the premises, or at $2,500.00.

2. Per 11 U.S.C. §§ 506(a), (d), the Mortgagee is held to have an allowed secured claim in the interest of the Debtor's estate in the premises in the amount of $2,500.00, and an allowed unsecured claim against the Debtor in the amount of $16,125.58.

## DISCUSSION

This Court has recently had the occasion to render a decision in a case in which most of the issues pertinent to the resolution of this matter are thoroughly discussed, in another Opinion filed this day, *In re Jablonski*, 70 B.R. 381 (Bankr.E.D.Pa.1987). For the benefit of the parties, we are attaching a copy of that Opinion as an Appendix hereto, and make reference hereto almost exclusively to those issues where the facts of the instant case diverge from those of *Jablonski*.

■ Thankfully, we note that the Debtor, unlike the *Jablonski* Debtor, has invoked the proper procedural device to effect a § 506 secured-status determination here, maintaining this matter as an adversarial proceeding rather than filing a "motion" to determine the extent of the Mortgagee's secured status. *See* Bankruptcy Rule 7001(2); *Jablonski, supra,* at 385.

As in *Jablonski*, we again acknowledge our indebtedness in resolving this matter to the precedents which have flowed from the prolific pen of our former Chief Judge, Emil F. Goldhaber, from his seminal decision in this area in *In re Everett*, 48 B.R. 618 (Bankr.E.D.Pa.1985), through his decisions in *In re Whitener*, 63 B.R. 701 (Bankr.E.D.Pa.1986), and in a case filed his last active day on our bench, December 31, 1986, in *In re Panas*, 68 B.R. 421 (Bankr.E.D.Pa.). It is characteristic of our assessment of Judge Goldhaber's remarkable legacy to our Court and to all bankruptcy judges faced with the duty of interpreting a new Code on the backdrop of the previous Act and the legislative history effecting changes to the Act to observe that decisions of Judge Goldhaber lead the way to the resolution of both *Jablonski* and this case. In *Jablonski*, we were guided by Judge Goldhaber's decision in *Panas*. In this case, we focus upon his equally-convincing analysis in *Whitener*.

In *Whitener*, the Debtor was a man who had purchased a premises several years before with his wife by the entireties, but whose entireties estate was subsequently severed by divorce. The premises in issue there, worth $14,000.00, was encumbered, at the time of the bankruptcy filing, by the following: a joint first mortgage in the amount of $6,952.54; a lien against the debtor only of $2,000.00; a joint lien of $14,379.00; and a second mortgage against the debtor only of $3,568.00. Holding that the first mortgage and the $2,000.00 lien consumed the entire $7,000.00 which the court determined as the value of the estate of the debtor in the property, Judge Goldhaber proceeded to avoid the entire joint lien of the defendant in an adversarial proceeding maintained pursuant to 11 U.S.C. § 506. This decision, and particularly the bifurcation of the full value of the premises in determining the value of the interest of the estate of the debtor there, controls the most hotly-disputed issue presented here.

The only rejoinder of the Mortgagee here is to ignore *Whitener* and to contend that, if joint tenants of any type have a joint obligation, then the Mortgagee may "look to the full fair market value of the Premises in securing its claim."

■ However, as Judge Goldhaber in *Panas*, and we, following him in *Jablonski*, point out, the equities in favor of the Debtor in a situation where there is a filing by one of two tenants by the entireties are less than in a matter involving a filing by one of two tenants in a divisible joint tenancy. In the case of the divisible joint tenancy, the discharge of one of the joint tenants will not impede a creditor, including the Mortgagee here, from proceeding against the co-tenant's interest in the premises. In fact, there is no procedural impediment to the Mortgagee's seeking relief from the co-debtor stay imposed by 11 U.S.C. § 1301(a) to attempt to execute upon the interest of Mr. Kenny in the premises involved in the instant case. Thus, while we agree with the Mortgagee in observing that cases such as *In re Dionne*, 40 B.R. 137 (Bankr.D.R.I.1984), present different

equitable considerations than those which would, like the court proceeded to do in *In re Odegaard*, 31 B.R. 718 (Bankr.D.Ore. 1983), justify the evaluation of the Debtor's interest at *less* than half of the value of the property if a creditor holds a judgment against only the debtor. However, we also believe that the equitable considerations here are significantly different from those presented in *Jablonski* and *Panas*. We conclude, with Judge Goldhaber, per *Whitener*, that the equities are such that evaluation of the value of the estate of a joint tenant in any form of property ownership other than that having the unique characteristics of tenancy by the entireties requires that the value of the premises be bifurcated when computing the value of the estate of a joint tenant, for purposes of 11 U.S.C. § 506(a).

We note, as Collier points out with ample citations, that the significant date for determining value is "the effective date of the plan," i.e., the date of the confirmation of the Debtor's plan. 3 COLLIER ON BANKRUPTCY, ¶ 506.04[2], at 506–36 to 506–37 & n. 54 (15th ed. 1986). That date has not yet arrived, but we note that the Confirmation Hearing is scheduled on January 21, 1987, shortly forthcoming, and we reiterate that scheduling in our attached Order.

It appears to us unlikely that the value of the premises has or will change between the date of Mr. Graham's inspection or Mr. Geller's inspection through the date of the Confirmation Hearing. The winter, taking its toll, could move the value downward, but we must settle on some figure to allow the Debtor to finalize her Plan and prepare for the Confirmation Hearing, lest it be further continued and the value revised further.

We have already indicated our basis for concluding that the value of the premises, at the crucial date of confirmation, should be established at $5,000.00. There is no basis, as the Mortgagee suggests, for devaluing the appraisal of Mr. Graham because he did not prepare a written appraisal and because he was "apparently non-certified." The experience of Mr. Graham as an appraiser exceeded, if anything, that of Mr. Geller. The crucial element of Mr. Graham's presentation is that it was not inadmissible hearsay, and that he was available for cross-examination. Since both the credible Debtor *and* Mr. Graham testified to the need for repairs to the roof and heating system, and Mr. Geller, in all candor, could not deny that such repairs might well be necessary and that the cost-estimates presented by Mr. Graham for performing these repairs were reasonable, we cannot agree with the Mortgagee that estimates for such repairs were "worthless." Clearly, the costs of such repairs are, per Collier, items that "must be deducted for purposes of a section 506(a) valuation from the hypothetical price for the collateral as so repaired or improved." 3 COLLIER, *supra*, at 506–34. This was precisely the approach utilized by Mr. Graham in his appraisal. Also significant is the fact that, at the hearing on the Motion for relief from the Stay, conducted before Judge Goldhaber on June 25, 1986, and resulting, per the docket entries, in his dismissal of the Motion the same day, where the Debtor might have been expected to inflate the value, she also contended that the full value of the premises was but $4,000.00. (see Notes of Testimony, June 25, 1986, at 14).

On the other hand, we consider Mr. Graham's estimates to be conservative, and the passage of time had obviously caused him to forget, when testifying, several of his bases for estimates. We feel, as we articulated immediately after hearing both experts testify on November 5, 1986, that the correct valuation should be fixed at the low side of the range between the $4,000.00 figure quoted by Mr. Graham and the $8,000.00 figure quoted by Mr. Geller. Therefore, carefully weighing their testimony and the credibility of each, which was impeccable on both sides, as both were candid in admitting their respective shortfalls, and the reliability and natural bias of each, we arrive at a full value figure of $5,000.00 for the premises in issue.

■ Applying our finding that we should divide the figure constituting the full value of the premises in half to arrive at the value of the Debtor's estate in the premises causes us to arrive at the figure of $2,500.00 as the amount of the Mortgagee's claim against the Debtor's estate which is secured. The Debtor has asserted no other objection to the Mortgagee's Proof of Claim setting forth a "Total Pay off" of $18,625.58. The balance of this figure, i.e., $16,125.58 must therefore be allowed as an unsecured claim.

An Order consistent with these conclusions, and reiterating the need to press this case to Confirmation, will therefore be entered by this Court.