In re Bonifacio LOPEZ, Debtor.

Bonifacio LOPEZ, Plaintiff,

v.

BENEFICIAL MUTUAL SAVINGS BANK, Defendant.

Bankruptcy No. 86–05224S.
Adv. No. 87–0287S.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 22, 1987.

Michal Fox, Philadelphia, Pa., for debtor/plaintiff.

Kevin Boyle, Philadelphia, Pa., for defendant.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION AND PROCEDURAL HISTORY

The instant Adversary proceeding, in the form of a Complaint objecting to the Proof of Claim of the Debtor's Mortgagee and seeking to determine the validity of the Mortgagee's secured status, presents two questions which we have not addressed in prior Opinions: (1) What "value" should be used in determining secured status: the fair market value of the mortgaged premises or the amount which the creditor could receive pursuant to a government mortgage insurance program if it were allowed to foreclose on the premises? (2) May a successor-in-interest to the original signatory to mortgage documents assert a recoupment claim for statutory damages under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "the TILA"), against the Mortgagee?

The first question is rather easily answered in favor of the Debtor, due to the overwhelming weight of authority in support of the Debtor. There is only, to our knowledge, one decision supporting the Mortgagee's position, which, due to its isolated stance, we must classify as an aberration. We therefore shall, as decisions in this court have done consistently in the past, utilize the fair market value of the premises to determine the extent of the Mortgagee's secured status, at least where, as here, it is the Debtor's intention to retain and utilize the property.

The second question is more difficult, because we find no precedent to guide us. However, due to our belief that the doctrine of recoupment is narrow in scope, we resolve this question in favor of the Mortgagee and determine that a successor-

in-interest of the signatory of loan documents cannot successfully raise a TILA recoupment claim against the lender.

The Debtor, BONIFACIO LOPEZ, commenced his Chapter 13 bankruptcy case on November 12, 1986. On March 25, 1987, he filed the instant Adversary proceeding against BENEFICIAL MUTUAL SAVINGS BANK, the Mortgagee (herein referred to as "the Mortgagee") on his premises at 2217 North Howard Street, Philadelphia, Pennsylvania 19133 (hereinafter referred to as "the premises").

On May 7, 1987, the hearing date on the Summons accompanying the Complaint, the parties' respective counsel presented us with a Stipulation of Facts, which they agreed would constitute the record in the proceedings. A briefing schedule was established, ultimately extended by agreement of the parties, by which the Debtor was to file his opening Brief on or before May 22, 1987; the Mortgagee was to file and serve its Brief by June 17, 1987; and the Debtor was to file a Reply Brief within two weeks of receipt of the Mortgagee's Brief. The last Brief was received by us on June 30, 1987.

## B. PERTINENT FACTS

The Stipulation of Facts, incorporating several paragraphs of the Debtor's Complaint, begins with the purchase of the premises on September 7, 1971, by one Israel Lopez, who financed the purchase with a loan from the Mortgagee which was insured by the Federal Housing Administration (hereinafter referred to as "the FHA"). On July 3, 1981, Israel Lopez conveyed the premises to one Marie Pantoja DeLopez. Ms. DeLopez died intestate on February 28, 1984, and the Debtor, her widower, thereupon received title to the property under Pennsylvania intestacy laws.

On March 18, 1987, the Mortgagee filed a Proof of Claim indicating that the Debtor's total debt on the mortgage obligation was $6,978.81, and pre-petition arrears on the mortgage were $3,570.00. However, the parties also stipulated that, as of the effective date of the Debtor's Plan, the fair market value of the premises was or would be but $1,000.00. They further stipulated that, if the mortgage were foreclosed upon, the Mortgagee would recover the sum due to it from the FHA under federal Regulations pursuant to its mortgage insurance, which figure, the Mortgagee contends, would exceed $7,000.00 and hence at least equal the figure recited as the "total debt" on its Proof of Claim.

## C. THE FAIR MARKET VALUE OF THE SECURED PROPERTY IS THE PROPER REFERENT IN A § 506(a) DETERMINATION

The first issue is whether we should utilize the fair market value of the premises or the sum which the Mortgagee would receive from the FHA, per its mortgage insurance, upon foreclosure in valuing the premises for purposes of 11 U.S.C. § 506(a). The Code provision in issue provides as follows:

506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

As Collier observes as to § 506(a), "virtually no attempt is made to set forth the manner in, or basis (except as dictated by the identified factors) upon which, such valuation is to be conducted. These are left to judicial developments." 3 COLLIER ON BANKRUPTCY, ¶ 506.04[2], at 506–24 (15th ed. 1987).

Our perusal of "judicial developments" has located but one case, upon which the Mortgagee understandably heavily relies, which supports its position that the amount which the creditor could receive from the mortgage insurer in the event of foreclosure is the significant figure in determining valuation for purposes of § 506(a), not the fair market value of the secured property, *In re Stumbo,* 7 B.R. 939 (Bankr. D.Colo.1981).

In *Stumbo,* the court was faced with valuation of the Debtor's automobile. It chose to value the vehicle at $10,676.29, the amount which the collateral holder could receive under a recourse arrangement with its dealer-assignor rather than at the $7,600.00 fair market value of the vehicle.

There are several cases which cite *Stumbo.* However, we have located no case which follows it. Its reasoning was rejected by two other bankruptcy judges sitting in the same court in *In re Reeder,* 60 B.R. 312, 314 (Bankr.D.Colo.1986); and *In re Beranek,* 9 B.R. 864, 866 (Bankr.D.Colo. 1981). In *Reeder,* the court states that it "declines to follow the much criticized rationale in *Stumbo* and instead adheres to the better-reasoned majority view as stated by *In re Cook,* ..." *Stumbo* has been expressly criticized and not followed in several other cases involving motor vehicles. *See In re Cook,* 38 B.R. 870, 875–76 (Bankr.D.Utah 1984); and *In re Klein,* 20 B.R. 493, 495 (Bankr.N.D.Ill.1982). While not cited, its reasoning has been expressly rejected in several other decisions involving valuation of motor vehicles. *See, e.g., In re Clements,* 11 B.R. 38, 39 (Bankr.N.D.Ga. 1981); and *In re Cooper,* 7 B.R. 537, 539 (Bankr.N.D.Ga.1980) (per NORTON, J.).

The Mortgagee cites *no* cases involving real estate which supports its contention. Instead, it cites to several cases where the courts have considered the fact that a mortgage is governmentally-insured in deciding whether a mortgagee is adequately protected in the context of mortgagees' motions for relief from the automatic stay, which have no bearing on the issue at hand. *See Commonwealth of Pennsylvania State Employees' Retirement Fund v. Roane,* 14 B.R. 542 (E.D.Pa.1981); *In re Roselli,* 10 B.R. 665, 667 (Bankr.E.D.Pa. 1981); and *In re DiBona,* 9 B.R. 21 (Bankr. E.D.Pa.1981). None of these cases involved § 506(a) valuations. In fact, valuations of the respective mortgagees' secured claims was not in issue in any of these cases in any respect. In those cases, the government insurance was merely argued by the Debtor-mortgagors as providing another form of protection for their respective mortgagees' interest. The amount of governmental insurance was not, as the Mortgagee purports to utilize it here, utilized there as a means for determining the amount of the respective mortgagees' security interests.

There are numerous decisions of this court in which the fair market value was, without question, the sole basis utilized for establishing value of residential real estate for purposes of § 506(a). The earliest decision that we could locate was rendered by former Chief Judge Goldhaber in *In re Savloff,* 4 B.R. 285 (Bankr.E.D.Pa.1980). A like reasoning process was consistently followed by Judge Goldhaber in numerous cases analogous to the instant case, *e.g., In re Jones,* 64 B.R. 380 (Bankr.E.D.Pa.1986); *In re Whitener,* 63 B.R. 701 (Bankr.E.D. Pa.1986); and *In re Bracken,* 35 B.R. 84 (Bankr.E.D.Pa.1983), through an Opinion filed by Judge Goldhaber on his last day on the bench, December 31, 1986, in *In re Panas,* 68 B.R. 421 (Bankr.E.D.Pa.1986). We expressly adopted and followed this line of decisions by our highly-regarded predecessor in *In re Jablonski,* 70 B.R. 381 (Bankr.E.D.Pa.1987); and *In re Crompton,* 68 B.R. 831 (Bankr.E.D.Pa.1987). We further note that the mortgage in issue in *Crompton* was FHA-insured, *id.* at 833, and none of the parties contended that the sum that the Mortgagee could recover on its FHA mortgage insurance could or should possibly be relevant to our determination.

Nor are these decisions of our court isolated. Decisions of courts elsewhere have consistently utilized the fair market value as the benchmark in valuating residences for determinations pursuant to § 506(a). *See, e.g., In re Yoder,* 48 B.R. 744, 746–47

(W.D.Pa.1984) (farm realty); *In re Davis,* 20 B.R. 212, 213 (C.D.Ill.1982) (mobile home); and *In re Courtright,* 57 B.R. 495, 496–97 (Bankr.D.Ore.1986) (farm realty).

While we agree with Collier that § 506(a) is less than totally clear on its face as to how valuation shall be determined in this context, we believe that the last sentence of this Code section provides some guidance. The value is to be "determined in light of ... the proposed use and disposition of the property, ..." There is no question that, be it ever so humble, the Debtor plans to utilize the premises as his home. His Plan is *not* to allow the premises to be foreclosed or cause the Mortgagee to collect from the FHA on its insurance. Thus, it seems logical to us to measure value by the price which the home, if used as a residence, would be expected to bring on the market. Hence, the use of the fair market value seems totally appropriate to us.

In commenting on the cases discussed herein, Collier states as follows:

> Most courts have disregarded the repurchase agreement price in fixing the amount of the secured claim. At least one court [1] has held, however, that the repurchase agreement must be given effect in order to give the holder of the secured claim what it would obtain upon foreclosure. Although the circumstances of the holder of the secured claim is [sic] not restored fully to the position he would have occupied had he been able to foreclose upon the collateral, the majority view appears to be correct. 3 COLLIER, *supra,* at 506–35.

Therefore, we decline the invitation of the Lender to overrule all of the prior decisions of the court, supported by Collier, which hold that, for purposes of § 506(a) valuation, the court must utilize the fair market value of the property as its basis. The parties have stipulated that the fair market value of the premises, at the crucial effective date of the Plan, *see Crompton,* 68 B.R. at 835, is $1,000.00. The parties have also stipulated that a lien of the City of Philadelphia in the amount of $802.21 is prior to the Mortgagee's lien. Therefore, we hold that the Mortgagee's interest in the interest of the Debtor's estate in the premises is but $197.79. *See Jablonski, supra,* 70 B.R. at 390.

## D. THE DEBTOR CANNOT ASSERT A TILA RECOUPMENT CLAIM AGAINST THE MORTGAGEE AS A SUCCESSOR–IN–INTEREST TO THE ORIGINAL MORTGAGOR.

Despite his seemingly resounding success in reducing the secured claim to a pittance, the Debtor seeks more: he attempts to wipe out the Mortgagee's secured claim entirely with a TILA recoupment claim. The Mortgagee counters with three arguments: (1) There are no violations of the TILA in the disclosure statement; (2) A TILA recoupment claim against a mortgagee is barred by the recent decision of the Pennsylvania Superior Court in *New York Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. 426, 431, 524 A.2d 951, 953 (1987); and (3) Not having been a party to the mortgage transaction, the Debtor cannot make a claim for recoupment for TILA violations committed therein.

A ruling in favor of the Mortgagee on either the second or third argument would wipe out all of the Debtor's TILA claims. Therefore, it is unnecessary to consider the violations in detail unless we rule in favor of the Debtor on both of these arguments.

We must reject the argument that the *Dietzel* case has any impact on our disposition, an issue which we recently considered at some length in *In re Dangler, Dangler v. Central Mortgage Co.,* 75 B.R. 931, 934–37 (Bankr.E.D.Pa., 1987).

However, as we pointed out in the beginning paragraphs of our Opinion, we believe that the third argument of the Mortgagee indeed has merit, although the issue is not articulated very clearly by the Mortgagee. Therefore, we shall deny any relief to the

---

**1.** However, Collier only cites one case, *Stumbo, supra.*

Debtor based upon a TILA recoupment claim.

We addressed the nature of recoupment and, particularly, the nature of a recoupment claim arising from TILA violations at some length in another Opinion filed this day, *In re Melvin, Melvin v. Beneficial Consumer Discount Co.*, 75 B.R. 952, 959–60 (Bankr.E.D.Pa.1987). In *Melvin*, we rejected the Debtors' attempt to utilize violations arising from contracts previous to the contract which gave rise to the Proof of Claim in bankruptcy as a basis for recoupment claims. There, we observed that "[r]ecoupment has ... been traditionally applied narrowly, and restricted to the precise same transaction in which the claim is made." 75 B.R. at 959. We reiterate that principal here, without repetition of all of the authorities which we cited in *Melvin* in support of it. *Id.*

We acknowledge cases which characterize the TILA cause of action as remedial rather than penal, and hence not entirely personal to the signatories to the contract in which the alleged TILA violations occurred. Thus, trustees in a consumer's bankruptcy, *see Riggs v. Government Employees Financial Corp.*, 623 F.2d 68 (9th Cir.1980); and *Murphy v. Household Finance Corp.*, 560 F.2d 206 (6th Cir.1977), and a personal representative of a decedent-consumer, *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 413–15 (7th Cir.1980), were held to have standing to pursue a consumer's TILA claims. We do not quarrel with these decisions in any respect.

However, we believe that there are two significant distinctions between the facts of those cases and the instant case which lead us to conclude that we cannot allow the Debtor to assert the claim of Israel Lopez, the original mortgagor, that the Mortgagee violated the TILA in writing this transaction. The first is the tenuous relationship between the Debtor and Israel Lopez. The Debtor is two transactions removed from the execution of the mortgage document. He is not the personal representative of Israel Lopez. Indeed, it is totally unclear whether there is any relationship of any kind between these parties. Unless we are to rule that a TILA violation is like an encumbrance which attaches to the mortgage and remains with it throughout any number of subsequent conveyances, and such a ruling would appear both unprecedented and erroneous, we do not see how we can allow the Debtor to assert Israel Lopez's claim. It appears to us that the language in 15 U.S.C. § 1640(a) which states that a lender which fails to comply with the TILA "with respect to any person is liable to *such person*" (emphasis added) forecloses any such application. We perceive a clear distinction between this case and the cases cited in the foregoing paragraph, where the party seeking the TILA damages was doing so as the representative of the very "person" who had been subject to the TILA violation.

The second distinction is that the Debtor's TILA claim here, unlike that of the bankruptcy trustees and personal representative of the consumer in *Riggs, Murphy,* and *Smith, supra,* is in the nature of recoupment. Again referencing to our discussion in *Melvin*, recoupment is a doctrine which must be narrowly applied. To allow a successor-in-interest to assert the claim of a consumer seems even more far-fetched than allowing the same consumer to make a recoupment claim arising out of a prior transaction in a series with the same lender, which we foreclosed in *Melvin*. We therefore must foreclose the Debtor's TILA claim here as well.

Consequently, we shall sustain the Mortgagee's defense to the Debtor's TILA claim, and proceed to enter an Order which grants the Debtor only that relief which he seeks pursuant to 11 U.S.C. § 506(a).