In re Helen E. BLAKEY, Debtor.

Helen E. BLAKEY, Plaintiff,

v.

Samuel R. PIERCE, Jr., Secretary of the Department of Housing and Urban Development and Lomas and Nettleton Company and City of Philadelphia Department of Revenue, Defendants.

Bankruptcy No. 86–00050K.
Adv. No. 86–0166S.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 24, 1987.

Opinion Vacated in Part and Amended
Oct. 16, 1987.*

* See supplemental opinion at 78 B.R. 435.

Theodore Clattenburg, Jr., Philadelphia, Pa., for debtor/plaintiff.

Virginia Powel, Asst. U.S. Atty., Philadelphia, Pa., for defendant/HUD.

David P. Comroe, Philadelphia, Pa., for Lomas and Nettleton Co.

Andrew B. Bralow, Philadelphia, Pa., for City.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION AND PROCEDURAL HISTORY

The instant Adversary proceeding involves primarily an issue of fixing the valuation of the residence of the Debtor and secondarily a determination of relative priorities of lienholders in order to make a determination of certain secured creditors' interests in the interest of the Debtor's estate in the premises, per 11 U.S.C. § 506(a).

In reaching our decision, we note that the Debtor is competent to provide testimony about the value of her own home. We also note that a Liquidation Report prepared by the United States Department of Housing and Urban Development (hereinafter referred to as "HUD") which was, in pre-trial Requests for Admissions, admitted to be genuine and authentic by certain parties, thereby is conclusively established to be part of the record in the case against those parties. Weighing this evidence with the testimony of two experts, we conclude that the fair market value of the premises, at the crucial date of Confirmation of the Debtor's Plan, was coincidentally the same as that set forth in the HUD Liquidation Report, i.e., $12,000.00.

On the issue of priority of the parties' liens, we received very little guidance. However, we will accept what is basically a stipulation of the participating parties that the Mortgagee's liens are entitled to priority over the liens of the City of Philadelphia, totalling $6,670.94, in determining the secured status of the Mortgagee. Therefore, we hold that the lien of the Mortgagee is reduced to $12,000.00. However, we are compelled to issue our Order with a caveat that, while we are ruling that the Mortgagee's claims are prior to those of the City for purposes of the § 506(a) determination, we are not rendering a decision either way regarding the avoidability of the liens of the City of Philadelphia totalling $6,670.94, because the parties presented no evidence or argument on this issue and because we believe that at least some of those liens are statutory liens which cannot be avoided, per 11 U.S.C. § 545, irrespective of their secondary priority vis-a-vis the Mortgagee.

The Debtor filed this Chapter 13 bankruptcy case on January 3, 1986. She commenced the instant Adversary proceeding on March 5, 1986, ultimately naming as defendants SAMUEL R. PIERCE, JR., Secretary of HUD, which agency was the orig-inal mortgagee on a mortgage of May 31, 1974, against the Debtor's premises at 1057 South 50th Street, Philadelphia, Pennsylvania 19143 (hereinafter referred to as "the premises"); LOMAS AND NETTLETON COMPANY, the assignee of the HUD mortgage as of February 28, 1983 (hereinafter referred to as "the Mortgagee"); and the CITY OF PHILADELPHIA DEPARTMENT OF REVENUE (herein referred to as "the City").

Due to the unexplained failure of either the Mortgagee or the City to file timely Proofs of Claim, per Bankruptcy Rule (hereinafter referred to as "Bankr.R.") 3002(c), the Debtor filed Proofs of Claim on behalf of the Mortgagee and the City "consistent with her Plan" on June 23, 1986,[1] and thereby was able to obtain confirmation of her Plan at the Confirmation Hearing on June 26, 1986.

Although these developments had the happy effect of expediting the main case, the permanent benefits to the Debtor were short-lived. On July 18, 1987, the Mortgagee, pursuant to Bankr.R. 3004, filed a Proof of Claim asserting a secured claim of $13,057.57 for arrears and a total balance of $21,739.52, and the Debtor's Brief advises that the City apparently filed a secured claim in the amount of $6,670.94 for real estate taxes ($2,453.84), water and sewer charges ($2,475.13), and nuisance abatement ($1,741.97).[2] Therefore, the Debtor was compelled to litigate the Adversary proceeding if she wished her Plan to remain viable. The City, HUD, and the Mortgagee filed Answers to the Complaint on April 11, 1986; April 22, 1986; and July 21, 1986, respectively.

Meanwhile, the Debtor engaged in pre-trial discovery, most notably by sending to each defendant an identical, nine-paragraph "Second Request for Admissions," pursuant to Bankr.R. 7036, which incorporates Federal Rule of Civil Procedure (hereinafter referred to as "F.R.Civ.P.") 36. The

---

1. The Debtor filed Proofs of Claim in the amounts of $10,000.00, secured, and $11,739.52, unsecured, for the Mortgagee; and $5,035.33 unsecured for the City. Her Plan, with which she has apparently complied, contemplated payments of $202.51 monthly for sixty months.

2. We have been unable to locate this Proof of Claim in the record, which also causes us to have some uncertainty about the status of the City's claim.

City and the Mortgagee, but not HUD, filed Answers. Most pertinent are the following responses: (1) Both admitted that the Mortgagee had a judgment in the amount of $21,739.52 against the Debtor; (2) The City only admitted that the fair market value of the premises was $13,200.00; and (3) The Mortgagee only admitted that a HUD Liquidation Report, listing an appraisal of the premises at $12,000.00 as of May 29, 1981, was "genuine and authentic."

The hearing on the Complaint, continued pending discovery, was scheduled for trial on May 28, 1987. On that date, counsel for the Debtor, HUD, and the Mortgagee (but not the City) appeared. The Debtor called realtor Edward V. Graham as an expert, and he testified that the value of the premises, as of January, 1986, was $10,000.00. The Debtor testified that the home had numerous defects including the absence of heat and hot water for four years and five years, respectively, and that she believed the value to have been between $8,000.00 and $9,000.00 as of January, 1986, and to be $7,500.00 at present. The Mortgagee also called a realtor, Barry J. Grife, as an expert, and he testified that the value of the premises, as of June, 1986, was $21,000.00.

On May 29, 1987, consistent with our statements at the close of the hearing, we allowed the Debtor to file an opening Brief on or before June 18, 1987; the Defendants to file Briefs on or before July 9, 1987; and the Debtor to file a Reply Brief on or before July 16, 1987. Among the Defendants, only the Mortgagee filed a Brief.[3]

Since the factual determination of the value of the premises is crucial to the case and this is an Adversary proceeding governed by Bankr.R. 7052, we are obliged to present our decision in the form of Findings of Fact, Conclusions of Law, and a Discussion.

## B. FINDINGS OF FACT

1. The opinion of neither expert witness can be totally accepted, although the opin-

ion of both are worthy of some consideration in the valuation process. Both must be weighted for bias. Neither indicated that he had a clear recollection of the particular characteristics of the premises. While we accept Mr. Graham's explanation that his original written appraisal, based primarily on comparable sales data, contained errors which were properly corrected, these errors are indicative of performance of his engagement in less than a careful manner. Mr. Grife, the Debtor's expert appraiser, putting aside his own relatively minor errors, appeared to have been even less careful in his first-hand inspection of the premises and superficial in his analysis than Mr. Graham. His opinion was based solely upon comparable sales data.

2. The opinion of the Debtor is clearly based on the particular characteristics of the premises, but must also be weighed for bias and absence of expertise.

3. The appraisal included in the HUD Liquidation Report appears totally unbiased and is probably the most objective of the various estimates of value. Although it is five years remote in time, the premises has deteriorated, in that the heater and hot water became dysfunctional thereafter, but this is offset by inflation in prices over the intervening time. We therefore conclude that the figure set forth in this Report can be considered in our determination.

4. Weighing all of the foregoing opinions of value carefully, we conclude that the fair market value of the premises, as of June 26, 1986, was $12,000.00.

## C. CONCLUSIONS OF LAW

1. This Court properly considered the testimony of the Debtor and the HUD Liquidation Report in reaching its conclusion.

2. The date of the confirmation of the Debtor's Plan is the significant date for determination of value per 11 U.S.C. § 506(a).

---

3. This suggests to us that HUD has determined that it has no interest in the case. We note that, at trial, HUD moved to be dismissed, but we

declined to grant this Motion and invited HUD's counsel to participate, which she did.

3. The Mortgagee has an allowed secured claim in the interest of the Debtor's estate in the premises in the amount of $12,000.00.

4. While we can conclude that the priority of the City's liens are secondary to the secured claim of the Mortgagee on the premises, we have insufficient evidence or argument regarding the issue of whether the City's claims are statutory liens and, if so, whether they are unavoidable in light of 11 U.S.C. § 545.

## D. DISCUSSION

This case is troublesome and difficult to resolve because of the varying degrees of participation by the parties defendant. The only parties submitting Briefs, the Debtor and the Mortgagee, devote most of their Briefs to argument on the factual issue of value, with only a peripheral treatment of some of the legal issues which are pertinent to the ultimate disposition of the case.

None of the parties appear to differ with the conclusion reached by us in a decision issued subsequent to the briefing, *In re Lopez, Lopez v. Beneficial Mutual Savings Bank,* 75 B.R. 961, 962–964 (Bankr.E.D.Pa.1987), that the fair market value of the secured property is the proper evaluative referent in a determination under 11 U.S.C. § 506(a). Therefore, we shall utilize that basis of valuation in our determination.

■ The Debtor, albeit somewhat reluctantly, states that she is prepared to concede, as the Mortgagee contends, that the date of confirmation of the Debtor's Plan, i.e., June 26, 1986, is the proper temporal referent in a determination under 11 U.S.C. § 506(a). After stating this, the Debtor proceeds to launch into a gratuitous attack on what she terms "the most often used argument" for utilizing the date of confirmation, i.e., the language of 11 U.S.C. § 1325(a)(5)(B)(ii).

In our decision in which we addressed this point, *In re Crompton (First Opinion),* 68 B.R. 831, 835 (Bankr.E.D.Pa.1987), we cited to Collier, but not to any Code section, as our support. Without citing to any Code section, Collier states:

The value of the subject property should be determined as of the date to which the valuation relates. For example, if the valuation is to determine the amount of a secured claim for purposes of a chapter 11 or 13 plan, the value should be determined as of, or close to, the effective date of the plan. 3 COLLIER ON BANKRUPTCY, ¶ 506.04, at 506–36 (15th ed. 1987).

We accepted this analysis in *Crompton,* and we continue to accept it.

As Collier points out elsewhere, virtually no attempt is made to set forth the manner in, or basis (except as dictated by the identified factors) upon which, valuation [pursuant to § 506a] is to be conducted. These are left to judicial developments. 3 COLLIER, *supra,* ¶ 506.-04[2], at 506–24.

*See Lopez, supra,* at 962. Our reason for choosing the date of confirmation is our practical observation that, at that date, it must be resolved precisely what payments the Debtor must make to each interested party under the Plan and hence it is the last possible date on which such a valuation determination could be made. We agree that we could arbitrarily select an earlier date, such as the filing date, as the date to render our valuation. However, we are quite aware that significant lapses of time can transpire between the filing and confirmation, and we believe that changes which occur to the secured property during the lapse of time should be discounted.[4]

We do not share the Debtor's belief that coordination with the requirement of 11 U.S.C. § 1325(a)(5)(B)(ii) that interest on the deferred portion of a secured claim liquidated in the Plan will accrue from the

---

4. A case in point is *In re Mitchell, Mitchell v. Frankford Trust Co.,* 75 B.R. 593 (Bankr.E.D.Pa. 1987). Between the date of the filing of the petition and the prospective date of confirmation, a garage on the premises in issue valued at approximately $2,500.00 was destroyed by fire. We can see no basis for utilizing the pre-fire valuation of the premises in determining the value of the mortgagee's secured interest in the property.

date of confirmation is irrelevant.[5] We also are interested in developing a consistency in our decision-making process and, since we expressed our view that the date of confirmation should be the significant date for determination of value pursuant to § 506(a) in *Crompton, supra,* nothing has come our way since to convince us to rule otherwise.

In determining value here, there are two separate evidentiary questions which must be resolved. The first is the competency and weight of the Debtor's testimony. The second is the admissibility of the HUD Liquidation Report.

 There appears to be no question that the Debtor's testimony is competent and entitled to at least some weight. The controlling Court of Appeals pronouncement on this issue appears in *Kinter v. United States,* 156 F.2d 5, 7 (3d Cir.1946), where the Court holds:

The owner may, because of his personal knowledge of the property, the uses to which it may be put, the condition of the improvements erected thereon, testify as to market value.

*Accord: LaCombe v. A–T–O, Inc.,* 679 F.2d 431, 433–36 (5th Cir.1982) (district court erred in excluding owner's testimony despite his admitted lack of expertise); *Bingham v. Bridges,* 613 F.2d 794, 796 (10th Cir.1980) (valuation of owner allowed even in area where valuation normally was established by expert testimony); *United States v. 147.47 Acres of Land in Monroe County, Pa.,* 352 F.Supp. 1055, 1058 (M.D. Pa.1972) (testimony of owner permitted "without qualification"); *In re Powell, Powell v. Lennon,* Bankr. No. 86–04247S, Adv. No. 87–0371S (Bankr.E.D.Pa., Order filed July 9, 1987) (only testimony of value was that of owner, which was accepted by

court); *In re Cooper,* 22 B.R. 718, 719 (Bankr.E.D.Pa.1982) (same); *Hencken v. Bethlehem Municipal Water Authority,* 364 Pa. 408, 413–14, 416, 72 A.2d 264, 267, 268 (1950) (owner's testimony indicating a loss of value of $53,000.00 permitted; although defendant's experts indicated loss was only in range of $7,050.00 to $3,000.00, court affirmed $42,500.00 award to owner); and *Westinghouse Air Brake Co. v. City of Pittsburgh,* 316 Pa. 372, 376–77, 176 A. 13, 15 (1934) (owner competent to testify even though he has no expertise or knowledge of comparable prices in the neighborhood).

 We also believe that our decision at trial that the HUD Liquidation Report was admissible as to HUD and the Mortgagee because of their previous answers to Requests for Admissions was correct.

On September 24, 1986, the Debtor forwarded an identical set of Second Requests for Admissions to HUD and to the Mortgagee which stated, at paragraph 8, as follows:

8. The document described as a Liquidation Report, prepared by the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and concerning the property at 1057 South 50th Street, Philadelphia, PA 19143, a true and correct copy of which is attached as Exhibit D, is genuine and authentic.

HUD failed to reply and the Mortgagee replied "Admitted."

F.R.Civ.P. 36(a) provides in pertinent part, as follows:

Rule 36. Requests for Admission

(a) Request for Admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the

---

**5.** We note, as the Debtor concedes, that § 1325(a)(5)(B)(ii) requires that the Plan must provide for payment of interest on that portion of the secured claim which is deferred under the Plan beyond the date of confirmation. *See Mitchell,* at 599; and *In re Crompton (Second Opinion),* 73 B.R. 800, 807 (Bankr.E.D.Pa.1987). Thus, it is logical to make the determination of value effective as of the effective date of the Plan, i.e., confirmation. It thus seems to us that there definitely is an interplay between the de-

termination of value and computation of interest on the amount of the claim which is deferred.

Again in using as an example the *Mitchell* case, see page 468, *supra,* n. 4, by evaluating the premises as of the date of confirmation, we could make both a fair valuation and a computation of the sums to be paid under the Plan on the deferred portion of the secured claim which took into account the destruction of the Debtors' garage. *See Mitchell, supra,* at 599.

truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact including the genuineness of any documents described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying. The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney ...

(b) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding.

It is clear, per F.R.Civ.P. 36(a), HUD's failure to answer the Request is deemed an admission. The Mortgagee clearly expressly admitted this assertion.[6]

Admissions obtained pursuant to F.R. Civ.P. 36 may be offered into evidence at trial. 4A J. MOORE, FEDERAL PRACTICE, ¶ 36.08, at 36–68 (2d ed. 1987); and 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 2264, at 741 (1970). As F.R.Civ.P. 36(b) provides, "[a]ny matter admitted under this rule is conclusively established." Thus, we correctly ruled at trial, upon the Debtor's specific request, that this Liquidation Report should be admitted.

While it is said that certain objections as to admissibility may be offered at trial, 8 C. WRIGHT & A. MILLER, *supra, id.*, it has also been pointed out that any objections, even as to relevancy, "should rarely be entertained, ..." 4A J. MOORE, *supra,* § 36.03[6], at 36–17.

It has also been said that "admissions are the equivalent of sworn testimony." 8 C. WRIGHT & A. MILLER, *supra, id.* However, a thoughtful decision of our district court, *McSparran v. Hanigan,* 225 F.Supp. 628, 636–37 (E.D.Pa.1963), points out that admissions should be even more conclusively binding than testimony, because they constitute "a studied response," which is "normally made under the direction and supervision of counsel." *Id.* at 637. This reasoning, per 8 C. WRIGHT & A. MILLER, § 2264, at 741–43, was incorporated into the language of F.R.Civ.P. 36(b) stating that matters admitted are "conclusively established." Furthermore, Rule 36(b) allows "withdrawal" or "amendment" of the admission if the party against which it is sought to be used is able to establish unfair prejudice thereby. Neither HUD nor the Mortgagee ever sought to withdraw their admission as to the Liquidation Report here.

We therefore believe that the admissions of HUD and the Mortgagee should have the broadest possible effect. Admission of the Debtor's request as to the genuineness and authenticity of the HUD Liquidation Report, since the request tracked the lan-

---

**6.** We note that the City denied this request "as a conclusion of law to which no responsive pleading is required." Whether such an evasive reply is an admission was rendered moot by the failure of the City to appear at the trial to contest the document's admissibility.

guage of F.R.Civ.P. 36(a), was the legal equivalent of conclusively establishing that this document could be admitted into evidence.[7]

■ Allowing the Debtor's testimony and the HUD Liquidation Report into evidence gives us four estimates of value:

(1) The Debtor—$8,000.00 to $9,000.00 as of January, 1986, and $7,500.00 today;

(2) Mr. Graham—$10,000.00 as of January, 1986;

(3) Mr. Grife—$21,000.00 as of June, 1986; and

(4) The HUD Liquidation Report—$12,000.00 as of May, 1981.

The Mortgagee expends most of its energies attacking Mr. Graham's testimony. Mr. Graham originally prepared his report in January, 1986, and originally misidentified two of the three comparables utilized in his report. He apparently discovered his error just prior to the hearing and re-wrote his report to correct his errors. Mr. Graham is an easy target for criticism because, although we believe his explanation, his error is indicative of a sloppy, mass-produced job. He undoubtedly used some comparables in his analysis, but his lack of a thorough inspection of the premises of the Debtor rendered his comparisons to the subject property of less than convincing weight.

The Mortgagee tendered some very specious hypotheses in attempting to "reconcile" the testimony of Mr. Graham and the Debtor with that of Mr. Grife in its Brief. First, it inferred that Mr. Graham's $1,000.00 adjustment of a sale price of a comparable premises between July, 1984, and January, 1986, established a fixed appreciation rate of $2,000.00 every two years. Adding this computation onto the Debtor's $7,500.00 purchase price of the premises in November, 1964, is then said to yield a figure in excess of that arrived at by Mr. Grife, and in support of his relatively very high estimate. We reject this conclusion without any evidence of the non-apparent and probably erroneous assumption that appreciation in the housing market proceeds on a straight-line basis.

Secondly, the Mortgagee suggests that the sum of the $7,500.00 purchase price of the premises and the $13,000.00 costs of the repairs to the kitchen of the premises in 1974, which were made with the funds obtained from the loans secured by the HUD mortgage assigned to the Mortgagee, can be added to increase the value of the property to $20,500.00. Again, there is no evidence that valuation can be ascertained by adding the cost of repairs to the purchase price of a premises. There is no evidence that repairs, no matter what their amount or cost, necessarily increase value of properties generally, or this particular premises, by any amount, let alone that of their cost. Thus, as we indicated during the trial, we do not believe that such a calculation is valid.

The Mortgagee also includes a reprise—without the authority which we asked it to produce on this point if it expected the court to accept it—that the Debtor's "neglect" in allowing the property to become "deteriorated" is relevant.[8] We continue to believe that the only relevant inquiry is the value of the premises as of the confirmation date, not an analysis as to how or why the value came to be what it is. We cannot refrain from commenting on the lack of sensitivity for the plight of the less financially privileged that pressing this argument reveals, at least, as here, in the complete absence of evidence of willful destruction of the premises. We would observe that it is unlikely in any event that the Debtor would willfully destroy her own home.

As the Debtor points out in her Reply Brief, the Mortgagee provides little analysis of the report of Mr. Grife, which arrives

---

7. We note, however, that we would not admit into evidence the City's admission, per its appraisal, that the value of the premises was $13,200.00, against the Mortgagee. The Mortgagee denied the accuracy of the City's appraisal.

8. The only authority offered at trial was "common sense." Our sense of the matter, as we indicate herein, is quite different from that of the Mortgagee.

at a considerably higher figure than all of the other valuation opinions. It appears to us that Mr. Grife's primary, if not sole, method of valuation is utilizing allegedly comparable sales. While this method is of course in itself hardly objectionable, and is the same method used by Mr. Graham, and we give weight to Mr. Grife's valuation as well as to that of Mr. Graham in our determination, we cannot consider this valuation determinative because it failed, in our view, to give proper consideration to the poor condition of the Debtor's premises. Mr. Grife admitted that he had no knowledge that the heater and hot water in the premises were dysfunctional, which we think, with Mr. Graham, would be likely to affect its value significantly. Since he did not carefully determine the condition of the subject property, it becomes impossible for Mr. Grife to find other properties truly "comparable" to it. We also note that Mr. Graham's report, also based on comparable sales, came out to a considerably lower figure.

At the close of the testimony, we indicated our views regarding the shortfalls of both appraisers. However, contrary to the interpretation of our remarks by the Mortgagee, we did not indicate, and do not hold now, that we should "discount" these opinions entirely and accept the Debtor's valuation testimony in preference to theirs. We do think that the Debtor's opinion is valuable and we believe that her descriptions of the premises are far more accurate than those of either appraiser. We also believe that the condition of the premises is a significant factor in valuation. However, we are not prepared to value the premises at $7,500.00, as the Debtor opined. We think that, in choosing a figure, the Debtor was undoubtedly biased and lacked any context for her estimate other than her first-hand knowledge of the condition of the premises.

As it develops, our final valuation figure coincides with the figure in the HUD Liquidation Report. This is not to be interpreted as relying primarily upon this Report as a basis, because we did not do so. We do note, however, that, unlike all of the other reports, we perceive no bias in this Report.

We also note that the Debtor introduced its presence and that both HUD and the Mortgagee effectively admitted that it could be included in the record. While this is certainly not to be construed as a stipulation by any parties that the figure set forth therein is accurate, this behavior indicates that no party considered its conclusion highly objectionable.

Again, we repeat that this is not to say that we are basing our decision on this Report. It was merely a component of our process. We recognize that this Report has certain obvious shortfalls. We have no knowledge of the competency of its maker. We can only surmise that she is unbiased or qualified to make the report. The appraisal is five years removed in time. However, noting that the heater and hot water became dysfunctional after this appraisal, we are inclined to believe that deterioration of the premises offset, at least to some degree, valuation increments through inflation. Hence, considering this Report, along with the experts' opinions and the opinion of the Debtor, we conclude that $12,000.00 is an accurate valuation of the premises as of June 26, 1986.

■ The absence of the City, at trial or in the briefing, impairs our resolution of its status. It did answer the Complaint and raise what appears to us to be a viable contention that its liens are statutory liens which cannot be avoided pursuant to 11 U.S.C. § 545. We observe that this argument appears to have more weight in application to its real estate tax claims than in application to its claims regarding water and sewer charges, cf. In re Adams, 40 B.R. 545 (E.D.Pa.1984) (water and sewer charges are not "taxes" entitled to "priority" status), and nuisance abatement charges.

HUD and the Mortgagee readily stipulated that their liens were entitled to priority over those of the City. The Debtor, contrary to the position that debtors similarly situated have consistently urged before us, also so stipulated. Compare Lopez, supra, at 964 (Debtor and Mortgagee agreed that undesignated City liens were

entitled to priority); *In re Alicea*, Bankr. No. 86–03178G (Bankr.E.D.Pa., Order filed May 19, 1987) (Debtor and Mortgagee stipulated that real estate taxes and water and sewer liens were entitled to priority); and *In re Jablonski*, 70 B.R. 381, 383, 390 (Bankr.E.D.Pa.1987) (same). In its absence, we will not rule in favor of the City on this point.

We believe that the Debtors usually take the position that the City liens are entitled to priority relative to mortgagees because it is believed that the City is relatively conservative in enforcing its liens, and, by prioritizing the City liens, reduction of mortgagees' liens can be maximized. The reason for rejection of that strategy here by the Debtor's counsel is unclear. In any event, given the parties' stipulation here, we determine the Mortgagee's interest in the interest of the Debtor's estate in the premises, per § 506(a), to be $12,000.00.

We are reluctant to render any decision on the avoidability of the City's liens. We do not know if the liens, or any of them, are entered pursuant to statutory authority. We do not, therefore, know if they are avoidable. If the City continues in its conservative enforcement posture here, there may not be any practical effect qua the City-Debtor relationship in any event. We shall, then, merely leave this issue open for future resolution if the City or the Debtor deems it necessary to obtain a resolution of it.

An Order consistent with this Opinion shall issue.

### ORDER

AND NOW, this 24th day of July, 1987, upon consideration of the pleadings, the Admissions of record, evidence adduced at trial on May 28, 1987, and the respective Briefs of the parties, consistent with the foregoing Opinion, it is hereby ORDERED AND DECREED and follows:

1. Judgment is entered in favor of the Debtor and Plaintiff, HELEN E. BLAKEY, and against the Defendants, SAMUEL R. PIERCE, SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (hereinafter referred to as "HUD") and LOMAS AND NETTLETON COMPANY (hereinafter referred to as "the Mortgagee") and the Proof of Claim filed by either of the above Defendants is hereby reduced to a valid Secured Claim of $12,000.00.

2. HUD, the Mortgagee, the Debtor, and/or the Trustee are accorded a period of twenty (20) days from the date of this Order to file an Amended Proof of Claim on behalf of the said Defendants consistent with this Opinion.

3. The Debtor may file an Amended Plan, in light of the Amended Proof of Claim filed per paragraph two and the other conclusions set forth in this Opinion, within twenty (20) days after the filing of the Amended Proof of Claim, serving all interested parties therewith.

4. Any interested party may file an Objection to the contents of any Amended Plan, and schedule same for a hearing, within twenty (20) days after service of any such Amended Plan.

5. The above Order is expressly made without any determination as to the avoidability and hence the extent of the valid Secured Claims of the Defendant, CITY OF PHILADELPHIA (hereinafter referred to as "the City"), against the Debtor's interest in the premises. However, it is determined that the lien of the Defendants HUD and Mortgagee shall have priority to any liens of the City.