**In re Joseph P. FISCHER, Debtor.**

**LOMAS MORTGAGE USA and Union Planters National Bank, Appellants,**

v.

**Joseph P. FISCHER, Appellee.**

**No. A90–440 CIV.**

**Bankruptcy No. A90–00518.**

United States District Court, D. Alaska.

Feb. 4, 1992.

---

Richard Ullstrom, of Routh, Crabtree & Harbour, Anchorage, Alaska, for creditors–appellants.

Stephen F. McKee, of Law Offices of William F. McNall, Anchorage, Alaska, for debtor-appellee.

## MEMORANDUM AND ORDER

SINGLETON, District Judge.

### Statement of the Case

Lomas Mortgage USA ("Lomas") and Union Planters National Bank ("Union") appeal an order confirming Joseph P. Fischer's ("Fischer") Chapter 13 Plan for the repayment of his indebtedness to Lomas and Union. In each case, the debt is secured by Fischer's real estate. Each security interest is evidenced by a deed of trust. The order was issued by the United States Bankruptcy Court for the District of Alaska and was dated September 26, 1990. 11 U.S.C. § 1325. The questions presented on appeal are:

1. Whether the Bankruptcy Court was correct in denying Lomas' motion for relief from automatic stay, preventing it from foreclosing on the security interest in Fischer's real property. *See* 11 U.S.C. § 362.

2. Whether the value of Lomas' and Union's secured claims should have

included the value of mortgage insurance.

3. Whether Fischer's Plan was proposed in good faith.

### Jurisdiction

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 157, which provides for jurisdiction over core proceedings. Automatic stays and confirmation of plans are included in core proceedings. This Court has jurisdiction pursuant to 28 U.S.C. § 158, which provides for appeals of final orders of the Bankruptcy Court.

### Statement of Facts

Fischer, a real estate agent, purchased the first property in question, the Sunrise Terrace Condominium, on January 11, 1984. He obtained a loan for $58,400 from Lomas. The loan was secured by a deed of trust on the condominium and was covered by private mortgage insurance.[1] Fischer originally used the property as his principal place of residence, but subsequently moved and converted it to a rental unit. In October 1988, the Lomas loan was modified to enable Fischer to pay lower monthly payments.

In June 1989, Fischer purchased the second property, a house in Eagle River. Fischer assumed an existing mortgage with a deed of trust in favor of Union for the amount of $90,202.00. The loan secured by the deed of trust is insured by the Department of Housing and Urban Development ("HUD"). Fischer purchased the property to use as rental property. He receives a positive cash flow resulting in a twenty percent return on his $2,500 investment.

In December 1989, Fischer defaulted on his Lomas loan. At that time Fischer continued to remain current on all other obligations. However, Fischer did incur a $16,759.15 debt to the Internal Revenue Service. Lomas began a nonjudicial foreclosure of the deed of trust on the Sunrise Terrace Condominium. The foreclosure was halted on June 7, 1990, the morning of the foreclosure sale, when Fischer filed his Chapter 13 petition. 11 U.S.C. § 1301 *et seq.*[2] Fischer testified at the Plan Confirmation Hearing that the reason for his filing the bankruptcy petition was to halt this sale.

Fischer filed his Chapter 13 Plan ("the Plan") on June 21, 1990.[3] The Plan called

---

**1.** There are three common types of mortgage insurance. The first is furnished by the Federal Housing Administration ("FHA"). The second is provided by the Veteran's Administration ("VA"). The third is provided by private mortgage insurance companies ("PMIs"). The FHA and PMIs charge the mortgagor premiums although the mortgagee is the actual insured party. The VA does not charge premiums. Its agreement is more properly termed a guaranty than insurance.

The objective of mortgage insurance is to shift the loss, if any, from a default and subsequent foreclosure from the mortgagee to the insurer. The claim procedures and amount of coverage vary depending on the insurance agreement. The insurer typically undertakes to provide the difference between what the value of the property is when the mortgagee forecloses and the remaining balance of the loan. However, some programs have a maximum amount that will be paid under the insurance. Generally, in order to make a claim the mortgage must be transferred to the insurer for foreclosure or the mortgagee must foreclose prior to making a claim. G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law* § 11.2 (1979).

**2.** Chapter 13 was created for individuals whose debts are primarily consumer debts. The purpose is to allow the debtor to retain as much of his or her property as possible and to enable the debtor to repay creditors over a set period of time. 11 U.S.C. § 342(b). Eligible debtors must be individuals with a regular income and have noncontingent, liquidated unsecured debts of less than $100,000 and noncontingent, liquidated secured debt of less than $350,000. 11 U.S.C. § 109(e).

Chapter 13 may be initiated by voluntary petition only. 11 U.S.C. § 303(a). The petition acts as an automatic request for relief. 11 U.S.C. §§ 301, 302(a). The filing of the petition automatically stays most actions against the debtor or the debtor's property, including foreclosure. 11 U.S.C. § 362(a)(5). Chapter 13 provides the best relief for debtors trying to save property from foreclosure. Debtors are provided cure rights under Chapter 13 to bring the mortgage debt up-to-date over a reasonable period of time, unlike Chapter 7. In Chapter 7 bankruptcy the automatic stay stops a foreclosure but usually after the debt is discharged the creditor is free to continue the foreclosure. 11 U.S.C. §§ 362(c)(2), 524(c).

**3.** A Chapter 13 plan is the debtor's proposal for paying his debts and rehabilitating himself. 11 U.S.C. § 1321. Creditors cannot propose plans

for Lomas' mortgage with a current balance of $55,272.70 to be divided into secured and unsecured components. The Plan also required that Union's mortgage with a balance of $89,000 be divided into secured and unsecured components. The final Plan established the secured portion of Lomas's mortgage at $17,000, the stipulated value of the condominium. The value did not take into consideration the amount of mortgage insurance that Lomas would receive if Fischer defaulted and the security interest was foreclosed. The parties also stipulated that the value of the Union property was $78,000. The final Plan established this as the amount of Union's secured claim. The value of Union's secured claim did not include the HUD mortgage insurance.

Lomas moved for relief from the automatic stay on the grounds that the Plan failed to adequately protect its interests and the property was not necessary to Fischer's reorganization. Lomas also objected to the Plan because it did not take into consideration the amount of mortgage insurance that Lomas would have received if it had been allowed to foreclose, thereby undervaluing its secured claim. In addition, it contended that not all of Fischer's disposable income was being used to make payments under the Plan.

Union objected to the Plan on the grounds that the Plan was not proposed in good faith, failed to commit all of Fischer's disposable income and undervalued Union's property because the HUD insurance was not included. The Bankruptcy Court tentatively confirmed the Plan, holding that the mortgage insurance would not be included. The Plan was found to have been proposed in good faith and the Bankruptcy Court confirmed the Plan on September 26, 1990.[4]

Union filed a notice of appeal on October 5, 1990. Lomas filed its notice of appeal on October 12, 1990. The appeals were referred to the Bankruptcy Appellate Panel ("BAP"), but both Union and Lomas objected to the referrals and the cases were returned to this Court on December 6, 1990.

For the reasons, stated below, this court affirms the Bankruptcy Court's refusal to include the value of mortgage insurance in the claim and that Court's denial of relief from the automatic stay. However, the case must be remanded to the Bankruptcy Court for further findings on the issue of Fischer's good faith.

*Automatic Stay*

Lomas contends that it was not adequately protected because the mortgage insurance was not included in the valuation

but may seek to modify a confirmed plan. 11 U.S.C. § 1329(a). There are few requirements. The plan must provide that the debtor submit all future earnings to the bankruptcy trustee, and provide for payment in full of priority claims.

The plan will usually categorize creditors into secured and unsecured and may establish classes within these categories. The plan will establish what amount will be paid to both secured and unsecured creditors. Often unsecured creditors will get only a fraction of what is owed. Secured creditors rights may be modified with one exception. The debtor may not modify the mortgage on the debtor's home. However, the Ninth Circuit in *In re Hougland*, 886 F.2d 1182 (9th Cir.1989), allowed bifurcation of the mortgage creditor's claim into secured (based on market value) and unsecured components. The creditor must have a consensual security interest in the property and it must be the only property the creditor has a security interest in under a single loan transaction. *See* R.E. Ginsburg, *Bankruptcy: Text, Statutes, Rules* § 15.04[d], at 1376 (2d ed. 1990).

A Chapter 13 plan usually lasts three years. However, the plan can be extended to five years if the debtor can show the longer time period is required. 11 U.S.C. § 1322(c). Creditor approval of the plan is not required as it is in Chapter 11. A creditor's only defense against a proposed plan is to oppose the confirmation. 11 U.S.C. § 1325.

**4.** The Bankruptcy Court is required to hold a confirmation hearing even if no one opposes the plan. 11 U.S.C. § 1327. Only parties in interest may object to the plan. Even if no one objects, the court must make an independent examination to determine if the plan meets all requirements.

Confirmation makes the plan binding on the debtor and creditors provided for in the plan. 11 U.S.C. § 1327(a). The confirmation vests all property unless otherwise stated in the plan with the debtor. The confirmation of the plan does not discharge the debt or the debtor as in Chapter 11. The debt is discharged once the payments under the plan are complete. 11 U.S.C. § 1328(a).

of its interest in the property. Lomas also contends that Fischer has no equity and the property was not necessary for reorganization within the meaning of 11 U.S.C. § 362(d)(2)(B). For both of these reasons, argues Lomas, it should have been allowed relief from the automatic stay.[5]

### 1. Standard of Review

■ Whether to grant relief from the automatic stay for cause under § 362(d)(1) is discretionary. *In re Mac Donald*, 755 F.2d 715, 716 (9th Cir.1985). As such, it is subject to the district court's review for an abuse of discretion. *Id.*

■ The decision to grant relief under § 362(d)(2), however, is not purely discretionary, because the necessary conditions are defined with some precision. The "court *shall* grant relief from the stay" if the two conditions specified in § 362(d)(2)(A) and (B) are met. 11 U.S.C. § 362(d) (emphasis added). The decision must rest on findings of fact which are, however, subject to a review under a clearly erroneous standard. Bankruptcy Rule 8013. The Bankruptcy Court does have broad discretion in determining the nature of the relief to be granted where the condi-

tions of § 362(d)(2) are satisfied. The court may terminate, annul, modify or merely condition the stay, as it deems appropriate. 11 U.S.C. § 362(d).[6]

### 2. Analysis

■ The Supreme Court in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 372, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988), addressed the issue of what the creditor's interest in the property should be under 11 U.S.C. § 361.[7] The Court interpreted § 506(a) as follows:

> In subsection (a) of the provision the creditor's "interest in property" obviously means his security interest without taking account of his right to immediate possession of the collateral on default. If the latter were included, the "value of such creditor's interest" would increase, and the proportions of the claim that are secured and unsecured would alter, as the stay continues—since the value of the entitlement to use the collateral from the date of bankruptcy would rise with the passage of time.... The phrase "value of such creditor's interest" in § 506(a) means "the value of the collat-

---

**5.** Section 362(d) states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

**6.** The highly subjective nature of the inquiry and response makes explicable the *Mac Donald* court's characterization of the standard of review under § 362(d) generally as one of abuse of discretion. *Cf. Mac Donald*, 755 F.2d at 716, 717 (not distinguishing standards applicable to § 362(d)(1) and § 362(d)(2)).

The standard of review is not relevant since, as it explained below, this Court concludes that the reference in § 362(d)(2) to "reorganization," and the policies of Chapter 13, preclude the application of that ground for relief from the

stay in Chapter 13. Even if the section does apply, however, this Court finds that the property is necessary to an effective rehabilitation of the debtor.

**7.** Section 361 provides:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

eral." We think, the phrase "value of such entity's interest" in § 361(1) and (2), when applied to secured creditors, means the same.

*Id.* at 372, 108 S.Ct. at 630. The value of the property should be the same whether being analyzed under § 506 or § 361. Therefore, the value of the creditor's interest that must be adequately protected does not include the value of the mortgage insurance.

■ Lomas also contends that Fischer has no equity in the condominium and that it is not necessary to the reorganization. For this reason, argues Lomas, the Bankruptcy Court should have made foreclosure possible by granting relief from the stay under § 362(d)(2). Courts are not in agreement whether § 362(d)(2)(B) applies to Chapter 13 relief. *See In re Scott*, 121 B.R. 605, 607–08 (E.D.Okla.Bankr.1990) (subsection does apply to Chapter 13); *but see In re Rhoades*, 34 B.R. 164, 166–67 (D.Vermont Bankr.1983) (subsection does not apply to Chapter 13); *In re Feimster*, 3 B.R. 11, 14 (N.D.Ga.Bankr.1979) (subsection does not apply to Chapter 13).

The Bankruptcy Court of the District of Vermont in *Rhoades* stated:

> If the subsection applies, a debtor who has no equity in property which is not necessary to consummate a Chapter 13 plan may be, through lift-stay actions, exposed to involuntary dispossession of such property. The purpose, however, of Chapter 13 is to enable individual debtors with regular incomes to develop and perform a plan for the repayment of debts over an extended period of time. The emphasis is on providing individuals with regular incomes an alternative to liquidation. Hence, it is the ability of the individual debtors to furnish the creditor with the value of his claim, in the form of property or from current earnings, which is the key to the protection of the creditor under a Chapter 13 plan. Whether the collateral being retained by the debtor is necessary to the subsistence or rehabilitation of the Chapter 13 debtor, or whether the debtor has any equity in the collateral, are not factors of concern ap-

plicable or relevant to Chapter 13 proceedings.

*Rhoades*, 34 B.R. at 167 (citations omitted).

The court in *Scott* determined that this section did apply to Chapter 13. It stated: "Since there is no specific section under Chapter 13 which will narrow the general application § 103(a), we must find that it was intended to be applicable in Chapter 13."

The Ninth Circuit has not yet faced this issue. This Court predicts that when it does it will agree with the analysis in *Rhoades*. It would defeat the purpose of Chapter 13 in many instances if this section was found to apply. A Chapter 13 proceeding is not a reorganization of a business entity and therefore should not require the same standards as a Chapter 11 reorganization.

■ In the alternative, the Court finds that the property in question is necessary to an effective rehabilitation. The property under the Plan provides a positive cash flow which is being applied to the Plan. The Plan pays the total secured claim and approximately eight percent of the unsecured portion.

Therefore, the Bankruptcy Court's decision that Lomas was adequately protected and relief from the automatic stay was unnecessary is AFFIRMED.

*Mortgage Insurance*

As stated previously, Lomas and Union carry mortgage insurance on their respective properties. If allowed to foreclose, Lomas would receive approximately $13,-000 in mortgage insurance proceeds and Union would receive approximately $11,-000. Both contend the valuation of their secured claims should be based on what a creditor would receive if the property were liquidated. Fischer contends that because he retains the property, the proper valuation is the current market value.

1. Standard of Review

■ Real property covered by a Chapter 13 plan is valued pursuant to 11 U.S.C. §§ 506 and 1325(a)(5). This Court reviews the Bankruptcy Court's interpretation of a

statute *de novo*. *In re American Mariner Industries, Inc.*, 734 F.2d 426, 429 (9th Cir.1984); *In re Case*, 115 B.R. 666, 668 (9th Cir. BAP 1990); *In re Malody*, 102 B.R. 745, 747 (9th Cir. BAP 1989).

## 2. Interpretation of §§ 506 and 1325(a)(5)

■ In order for Fischer to retain property under Chapter 13, he must cure any defaults and pay the amount of the secured claim of the creditor. Therefore, both Lomas' and Union's secured claims must be determined and this is done pursuant to § 506 which provides in part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The Ninth Circuit Bankruptcy Appellate Panel addressed the issue of valuation of property in a Chapter 13 bankruptcy in *Malody*. The court was asked to determine whether automobiles should be valued at replacement or wholesale value. The court stated:

[W]e recognize the well-reasoned view that the purpose of valuation under Section 1325(a)(5)(B)(ii) is not to assure that a secured claimant under the plan will receive as much money as the debtors would be required to spend to replace the vehicles. Rather, the purpose is to protect a secured claimant from loss by assuring that it will receive as much money under the plan as it would receive if it were permitted to sell the vehicles in a commercially reasonable manner. The replacement cost is not an appropriate standard.

*Malody*, 102 B.R. at 749.

However, the court stated that replacement may be proper under certain circumstances when the property is essential to the debtor's future plans. *Id.* The court also considered the House and Senate Reports in determining the proper valuation of property under § 506. The *Malody* court concluded:

"Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine [the value of the collateral] on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

*Malody*, 102 B.R. at 748, (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854, and 6312).

Citing a seminal case, the *Malody* court described the purpose of § 1325(a)(5)[8] when analyzed in conjunction with § 506(a) as follows:

The valuation provisions of [this] legislation ... requir[e] Chapter 13 debtors to pay as a secured claim only the amount the secured creditor would receive upon repossession and sale of the collat-

---

**8.** Section 1325(a)(5)(A) states in relevant part:
(a) Except as provided in subsection (b), the court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
. . . .
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. . . .

eral.... Section 506(a), at least in this context, is intended to place a value on the collateral equal to its value *to the creditor*.... A rule requiring valuations under Section 1325(a)(5)(B) to measure the replacement cost of collateral to the debtors would defeat the design of Congress by giving secured creditors leverage they were not meant to have.

*Id.* at 750 (quoting *In re Cook*, 38 B.R. 870, 873–74 (D.Utah 1984) (emphasis in *Cook*)). Lomas and Union both assert that *Malody* requires that the property be valued according to the value they would receive if they were to liquidate. This would include the sale price plus any insurance proceeds.

The analysis of the *Malody* court has recently been approved by the Ninth Circuit in the case of *In re Mitchell*, 954 F.2d 557 (1992). In *Mitchell*, the Ninth Circuit affirmed the decision of the Bankruptcy Appellate Panel that the debtors' Cadillac was to be valued at wholesale value rather than replacement cost. Relying heavily on the "vast majority of reported bankruptcy court decisions" which have rejected a replacement cost valuation standard, *id.* at 560, the *Mitchell* panel, over Judge Noonan's dissent, held that "the wholesale value should apply as a general rule in valuing vehicles." While the debtor's proposed use of the collateral may justify use of replacement value in the rare case, *see Mitchell* at 560, in most cases the proper valuation will be the wholesale value, which most nearly corresponds to the "creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a).

However, in *Mitchell*, as in *Malody*, there was no insurance involved or any type of recourse agreement that would guarantee the creditor more than market value. Only one federal district has addressed this specific issue. Both the Bankruptcy Court and the District Court of the Eastern District of Pennsylvania in *In re Lopez*, 75 B.R. 961 (E.D.Pa.Bankr.1987) (*Lopez I*), aff'd, 82 B.R. 712 (E.D.Pa.1988) (*Lopez II*), declined to include mortgage insurance in the valuation of a creditor's secured claim.

The Bankruptcy Court in *Lopez I* cited several cases involving the value of automobiles where a recourse agreement would have provided the creditor with more than the fair market value. All of the courts but one, *In re Stumbo*, 7 B.R. 939 (D.Colo. Bankr.1981), followed the majority view that the appropriate value is the fair market value. *Lopez I*, 75 B.R. at 963–64.

The court in *Lopez I* noted that one commentary, after analyzing cases involving repurchase agreements and § 506, concluded:

> Most courts have disregarded the repurchase agreement price in fixing the amount of the secured claim. At least one court has held, however, that the repurchase agreement must be given effect in order to give the holder of the secured claim what it would obtain upon foreclosure. Although the circumstances of the holder of the secured claim is [sic] not restored fully to the position he would have occupied had he been able to foreclose upon the collateral, the majority view appears to be correct.

3 Collier on Bankruptcy ¶ 506.04[2], at 506–35 (citation omitted) (quoted in *Lopez I*, 75 B.R. at 964).

Both the bankruptcy and district courts in the *Lopez* case believed that the last sentence of § 506 provides the needed guidance in determining the value of property. The sentence states: "Such value shall be determined in light of the purpose of the valuation and the *proposed disposition or use of such property*...." 11 U.S.C. § 506 (emphasis added). The courts held that because the plan did not relinquish the property for foreclosure, the proper valuation was the fair market value without consideration of the mortgage insurance.

In a recent case from South Carolina, *Grubbs v. National Bank of South Carolina*, 114 B.R. 450 (D.S.C.1990), the district court overruled the Bankruptcy Court's decision valuing an automobile at retail because of a recourse agreement. The court cited many of the same cases cited by the court in *Lopez I*, plus additional cases in support of the valuation of

property at market value without consideration of any recourse agreement. *Grubbs*, 114 B.R. at 452 n. 2.

The *Grubbs* court endorsed a commentator's view that establishing a secured claim at retail is inconsistent with the purpose of Chapter 13.

> Section 1325(a)(5)(B) is meant to insure that a secured creditor will receive the equivalent of recourse to the collateral which was the inducement for extending the loan to the debtor. In other words, section 1325(a)(5)(B) protects the creditor's expectations of recovery *against the debtor* in the event of default. As long as only the debtor and creditor are involved, these expectations are protected by guaranteeing the creditor the amount he would receive upon repossession and sale of the collateral.
>
> The existence of a repurchase agreement, however, alters the creditor's expectations. Though the creditor still expects to recover the value of the collateral from the debtor, he anticipates additional recovery from the dealer in the amount by which the repurchase price exceeds the market value of the collateral in the creditor's hands. Thus, permitting the creditor to recover only the fair market value of the collateral in his hands *does* protect his expectations of recovery *as against the debtor.*

Bowman & Thompson, *Secured Claims Under Section 1325(a)(5)(B): Collateral Valuation, Present Value, and Adequate Protection*, 15 Ind.L.Rev. 569, 577 (1982)

(emphasis in original) (quoted in *Grubbs*, 114 B.R. at 452).

The Ninth Circuit is likely to agree with the majority of courts, including *Lopez I* and *Grubbs*, that agreements between the creditor and third parties should not affect the valuation of the subject property. Under this view, the proper value is wholesale or market value, the value the creditor could expect to recover from the debtor, not amounts the creditor could receive from third parties. *Grubbs*, 114 B.R. at 452. Therefore, the Court affirms the Bankruptcy Court's decision that the value of the property in question should not include the mortgage insurance.[9]

### Good Faith Plan

Union contends that Fischer proposed his Plan in bad faith,[10] and is unfairly manipulating the code. It argues that Fischer was not in need of bankruptcy relief but only wished to strip down the mortgages. Fischer responds that he had a serious cash flow problem that could only have worsened, causing him to lose everything. Lomas was already foreclosing on its property and the IRS had assessed a large amount of tax.

### 1. Standard of Review

 The finding by a Bankruptcy Court that a debtor's plan was proposed in good faith is a finding of fact. Findings of fact are reviewed under the clearly erroneous standard, with due regard given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses. *In re Metz*, 820 F.2d 1495, 1497 (9th Cir.1987).

---

**9.** Neither the Bankruptcy Court nor this court is writing on a clean slate. While I believe that the Ninth Circuit will follow the majority view and, therefore, I affirm the Bankruptcy Court, I do not believe this result to be a good one. When making a loan, a lender relies primarily on the credit-worthiness of the borrower and, secondarily, on the collateral offered as security. The less credit-worthy the borrower, the greater the security must be and, by extension, the greater the borrower's equity in the collateral. Mortgage insurance is intended to enable poor credit risks to acquire property with a smaller down payment and use that property as security despite a very low equity for the resulting loan. Mortgage insurance makes the transaction acceptable to the creditor. Thus, it is plainly false to say that creditors do not rely on

the mortgage insurance in electing to extend credit or that the result in this case does not frustrate the reasonable expectations of lenders. The best solution, in light of the prevailing view, would be to require rewriting mortgage insurance contracts to permit payment, in the absence of foreclosure, where the debtor successfully uses Chapter 13 to rewrite his or her security agreement. Unfortunately, this solution is only prospective and will not aid lenders caught in the Chapter 13 trap.

**10.** A plan proposed by a debtor under Chapter 13 must be proposed in good faith, and not by any means forbidden by law. *See* 11 U.S.C. § 1325(a)(3).

The Supreme Court has held that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Greater deference is to be given when the factual findings are based on an assessment of witness credibility. *Id.* at 575, 105 S.Ct. at 1512.

### 2. Good Faith

Unfortunately, review of the Bankruptcy Court's determination in this case, even review for clear error, is frustrated by the lack of detailed findings on issues relevant to good faith. The Bankruptcy Court held an evidentiary hearing. Fischer testified at the confirmation hearing that he filed bankruptcy mainly to prevent foreclosure on the Lomas property and to alleviate the effects of his cash flow problem. He stated that when he purchased the Union property, less than one year before filing, he knew nothing about Chapter 13. There is some further indication in the record that all of his disposable income is being applied to the Plan. It appears from the record before this Court that that single factor, the total devotion of Fischer's disposable income to the Plan, was considered to be dispositive by the Bankruptcy Court. That is not a sufficient inquiry. The Court therefore remands this matter to the Bankruptcy Court for further and more detailed findings on the issue of good faith. The following discussion is intended for that Court's guidance in conducting the inquiry.

Good faith is not defined within the Code or the legislative history. *In re Chinichian*, 784 F.2d 1440, 1441 (9th Cir.1986); *cf. In re Schaitz*, 913 F.2d 452, 455–56 (7th Cir.1990) (collecting cases addressing 'good faith' and noting lack of precise definition before remanding for further findings). However, the Ninth Circuit has discussed its meaning in the Chapter 13 context in some detail. *See In re Goeb*, 675 F.2d 1386 (9th Cir.1982). The *Goeb* court scrutinized the findings of the court below for sufficiency. *Goeb*, 675 F.2d at 1389.

The proper inquiry, generally, is whether the debtor acts equitably. *Goeb*, 675 F.2d at 1390. In addition to the substantiality of the proposed repayment, the court should inquire into whether the debtor misrepresented any facts in his plan, whether the debtor manipulated the code, and whether the debtor proposed an inequitable plan. *Id.* The *Goeb* court declined to attempt to list all of the specific items which should be reviewed by the courts, concluding instead that the courts must review "*all* militating factors." *Id.* (emphasis in original). This is effectively an inquiry employing the familiar totality of the circumstances method. *See In re Selden*, 121 B.R. 59, 60 (D.Or.1990) (citing *In re Metz*, 820 F.2d 1495, 1498 (9th Cir. 1987)).

Other circuits have attempted to provide lengthy lists of factors to be considered. Such lists are illustrative and thus may be helpful to the Bankruptcy Court in determining issues of good faith. The Eighth Circuit has listed the following eleven factors to be considered along with the percentage of payment to unsecured creditors in determining good faith under the totality of the circumstances:

1. The amount of the proposed payments and the amount of the debtor's surplus;

2. The debtor's employment history, ability to earn and likelihood of future increases in income;

3. The probable or expected duration of the plan;

4. The accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

5. The extent of preferential treatment between classes of creditors;

6. The extent to which secured claims are modified;

7. The type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

8. The existence of special circumstances such as inordinate medical expenses;

9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10. The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11. The burden which the plan's administration would place upon the trustee.

*In re Estus,* 695 F.2d 311, 317 (8th Cir. 1982); *cf. In re Warren,* 89 B.R. 87, 92–93 (9th Cir. BAP 1988) (noting usefulness of *Estus* list).

■■■■■ The Bankruptcy Court may also find it helpful to consider cases in which courts have rejected filings or proposed plans on account of bad faith. *See, e.g., In re Waldron,* 785 F.2d 936, 939–41 (11th Cir.1986) (filing made solely to avoid unprofitable option agreement was in bad faith); *In re Warner,* 115 B.R. 233, 238 (Bankr.C.D.Cal.1989) (severe discrimination within class of unsecured creditors was evidence of bad faith); *In re LeMaire,* 898 F.2d 1346, 1352–53 (8th Cir.1990) (en banc) (plan which would discharge victim's judgment against perpetrator of aggravated assault was filed in bad faith; in Chapter 13 filing, Bankruptcy Court gave insufficient weight to public policy found in Chapter 7 against discharge of claim resulting from willful or malicious injury). Bad faith does not equal common-law fraud. The ultimate question is whether the Plan was necessary to enable the debtor to ward off financial disaster or instead merely a means to enable the debtor to enjoy a "windfall." If the practical result of the Plan serves to enrich the debtor, at the creditors' expense, it is not a "good-faith" plan.

On remand, the Bankruptcy Court should consider *"all* militating factors" in determining whether Fischer has proposed his plan in good faith. When accompanied by further detailed findings on this issue, its order will then be susceptible to review by this Court, under a clearly erroneous standard, with due regard given to the Bankruptcy Court's ability to judge the credibility of witnesses appearing before it.

The ruling of the Bankruptcy Court is AFFIRMED as to the automatic stay and mortgage insurance and REMANDED for further findings as to the good faith of Fischer's plan.