**LOMAS MORTGAGE USA,**
Creditor–Appellant,

v.

Daniel WIESE; Sue Ann Wiese,
Debtors–Appellees.

**LOMAS MORTGAGE USA, Creditor,**

and

**Federal National Mortgage Association,**
Creditor–Appellee,

v.

Daniel WIESE; Sue Ann Wiese,
Debtors–Appellants.

Nos. 91–36082, 91–36173.*

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 20, 1992.

Submission Deferred Sept. 1, 1992.

Resubmitted Dec. 2, 1992.

Decided Dec. 4, 1992.

* In Docket Nos. 91–35470, 91–35924, 91–35950, and 91–35963 unpublished dispositions will be filed at a subsequent date.

Richard Ullstrom, Routh Crabtree & Harbour, Anchorage, Alaska, for creditor-appellant-creditor-appellee.

David Rankine, McNall & Rankine, Anchorage, Alaska, for debtors-appellees-debtors-appellants.

Before: HUG, D.W. NELSON, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Lomas Mortgage (Lomas), a partially secured and unsecured creditor of Chapter 13 debtors, Daniel and Sue Ann Wiese, held a security interest in the Wieses' residence. Lomas appeals the district court's partial affirmance of the bankruptcy court's order confirming the Wieses' Chapter 13 plan. The Wieses cross-appeal the district court's calculation of the amount of the secured claim in their residence.

## I. BACKGROUND

The Wieses purchased their residential real property in September, 1985, with the aid of a mortgage loan which was secured by a deed of trust against their residence. The loan was covered by private mortgage insurance which protected the lender in case of default by the Wieses and a decline in the value of the collateral. The note and deed of trust were assigned by the original lender to the Federal National Mortgage Association (FNMA).

The Wieses filed this Chapter 13 proceeding with the Bankruptcy Court on January 25, 1990. At the time of their petition, the residence was worth less than the $155,000 balance still outstanding on the debt, due to a downturn in the Alaskan real estate market and economy. The bankruptcy court confirmed the Wieses' Chapter 13 plan on November 2, 1990, in an order that provided:

> The debtor and Lomas Mortgage USA and Federal National Mortgage Association ... have stipulated that the secured claim of Secured Creditor is $145,000.00, less $11,000.00 to repair a septic system and certain other "transaction costs" of $13,500.00, for [a] net figure of $120,-500.... This is secured by a deed of trust in favor of Secured Creditor against the real property that is the debtor's principal residence. Secured Creditor therefore has an allowed secured claim of [$120,500]. The balance [of] Secured Creditor's claim is disallowed as a secured claim but is allowed as a general unsecured claim....

Lomas appealed the order of confirmation to the district court which affirmed the confirmation of the plan and reversed the bankruptcy court's reduction of the secured claim based upon transaction costs. As a result of the partial reversal, Lomas' secured claim was raised to the full $145,-000. Lomas appealed and the Wieses cross-appealed contending the transaction costs were valid.

Lomas concedes that our decision in *Hougland v. Lomas & Nettleton Co. (In re*

*Hougland),* 886 F.2d 1182 (9th Cir.1989), which permitted modification of unsecured portions of the debt, controls. It argues, however, that we should reverse our earlier ruling because the plain meaning of 11 U.S.C. § 1322(b) prohibits modification of both the secured and unsecured portions of a residential mortgagee's claim. Lomas claims that *Hougland* was based on faulty reasoning because it "ignored" the definition of the word "claim" provided by section 101(5)(A) as a "right to payment" whether it is secured or unsecured.[1] Second, Lomas urges us to overrule *Hougland* in light of the recent Supreme Court ruling in *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Finally, Lomas contends that *Hougland*'s interpretation of the statute creates absurdities by eliminating the special protection for residential mortgagees. We reject these contentions and affirm.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 158(d). We review *de novo* the interpretation of a statute by the district court and bankruptcy court. *In re Am. Mariner Indus., Inc.,* 734 F.2d 426, 429 (9th Cir.1984).

## III. DISCUSSION

A. *Bifurcation and Modification of Unsecured Claims*

 *Hougland* concerns the interplay between two bankruptcy statutes, 11 U.S.C. §§ 506(a) and 1322(b)(2). 886 F.2d at 1183. That case resolved two issues and held that: (1) a Chapter 13 debtor could bifurcate a claim secured only by the debtor's principal residence into a secured and unsecured portion; and, (2) the lender's rights on the unsecured claim could be modified. *Id.* at 1185. We now reaffirm our holding in *Hougland.*

Initially, *Hougland* noted that " '[s]ubsection (a) of § 506 provides that a claim is

secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured.' " *Id.* at 1183 (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989)). Second, the court observed that section 1322, dealing with debtors' plans in Chapter 13 proceedings, provides in part:

(b) Subject to subsections (a) and (c) of this section, the plan may ...

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, ·or leave unaffected the rights of holders of any class of claims....

*Id.* (emphasis in original). Finally, after acknowledging the split in authority, *Hougland* agreed with the line of cases which "found that nothing in section 1322 affects the determination under section 506(a) that an undersecured claim can be divided into a secured portion and an unsecured portion." *Id.*

In allowing the modification of the unsecured portion of a claim, *Hougland* reasoned that the meaning of the statute begins and ends with the language of the statute itself:

It should first be noted that it is clear that section 506(a) applies to Chapter 13 proceedings. *See* § 103(a). There is, therefore, no reason to believe that the phrases "secured claim" and "unsecured claim" in section 1322(b) have any meaning other than those given to them by section 506(a). It follows that Lomas' claim had a "secured claim" and an "unsecured claim" component.

That being said, we can look at the "other than" clause. That clause follows the secured claim portion of the sentence and precedes the unsecured claim portion. Certainly it refers to what preceded it, and indicates that a secured resi-

---

**1.** 11 U.S.C. § 101(5)(A) defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

dential real estate claim will have special protection. Indeed, if the referent of the "other than" clause is not the secured claim language which precedes it, what could the referent be? It would be most unusual if it were the unsecured claim language or the whole sentence. That strongly indicates that only the "secured claim" portion is protected.

*Hougland,* 886 F.2d at 1183–84.

This interpretation has been uniformly followed by the only three other circuit courts which have had occasion to address the question. *Bellamy v. Federal Home Loan Mortgage Corp. (In re Bellamy),* 962 F.2d 176, 180–81 (2d Cir.1992) ("other than" clause must be limited to secured claim, citing *Hougland* ); *Hart v. Eastland Mortgage Co. (In re Hart),* 923 F.2d 1410, 1415 (10th Cir.1991) ("[t]he position of the Third and Ninth Circuits and the other courts which have adopted threshold bifurcation under section 506(a) prior to submission of the secured claim portion of a mortgage to the protection of section 1322(b)(2) reflects the plain meaning of section 1322(b)(2) ..."); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 127 (3rd Cir.1990) ("[w]e agree with the Ninth Circuit's view that because the 'other than' phrase is best read to refer to secured claims, the 'other than' phrase should be read to limit modification only of that portion of the claim that is secured"). *Hougland* was correctly decided and we find no reason to upset its holding. Moreover, even assuming that we disagreed with *Hougland,* "[w]e are bound by decisions of prior panels unless an en banc decision, Supreme Court decision, or subsequent legislation undermines those decisions." *United States v. State of Washington,* 872 F.2d 874, 880 (9th Cir. 1989) (internal quotations omitted). Because *Hougland* has not been undermined, we cannot depart from its holding.

Although Lomas spends a great deal of energy discussing the legislative history behind section 1322(b)(2), we need not delve into that here because the statute can be interpreted on its face. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " *United States v.*

*Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). We still adhere to the brief comments made in *Hougland* that the legislative history indicates a desire to assist home lenders and nothing more. *See* 886 F.2d at 1185.

We also reject Lomas' contention that lenders will be subject to unfair treatment and will face "absurd results" if *Hougland* is to stand. "[T]hese speculative contingencies regarding fluctuating real estate prices are not sufficient to justify a result contrary to that required by the Code's language." *Bellamy,* 962 F.2d at 186.

The recent Supreme Court decision, *Dewsnup v. Timm,* — U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), does not affect our decision in *Hougland.* As the Second Circuit has observed, "*Dewsnup* did not hold that 'secured claim' in other provisions of the Code was never to be construed as it was in § 506(a). Its analysis was limited to 506(d) and the facts before it." *Bellamy,* 962 F.2d at 182 (citations omitted). *Dewsnup* "was concerned solely with lien avoidance which extends beyond a bankruptcy case, arising by effect of the 'lien avoidance' language of § 506(d)." *In re Taras,* 136 B.R. 941, 949 (Bankr.E.D.Pa.1992). Nowhere does *Dewsnup* suggest that its discussion of 'lien stripping' has any impact on the bifurcation of secured claims from unsecured claims for the purposes of Chapter 13.

## B. *Mortgage Insurance*

Lomas argues that if modification is to be permitted, then its secured claim must be valued according to what FNMA could receive on its mortgage insurance. The relevant portion of section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such credi-

tor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

The legislative history of this section is minimal. It states only that "[w]hile courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property." S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5854.

Lomas argues that this means the value of the creditor's secured claim in bankruptcy is what the creditor could sell its interest in the collateral for outside of bankruptcy. FNMA's claim is based upon mortgage insurance which provides that if default causes foreclosure and a third party does not purchase the property, the property may be conveyed to the insurer by the lender after foreclosure in return for payment of the principal balance and some expenses. Lomas argues, consequently, that the value to FNMA of its collateral is not the market value of the property but consists of that value plus what FNMA could receive under its mortgage insurance. We reject this argument.

Instead, we conclude that mortgage insurance should not be included in the valuation. Our conclusion is based in part upon the last sentence in section 506(a) which states "[s]uch value shall be determined in light of the purpose of the valuation and of the *proposed disposition or use of such property....*" 11 U.S.C. § 506(a) (emphasis added). We adopt the reasoning of *In re Fischer*, 136 B.R. 819 (D.Alaska 1992), which held "that the value of the property in question should not include the mortgage insurance" because "agreements between the creditor and third parties should not affect the valuation of the subject property." *Fischer*, 136

B.R. at 828 (following the analysis of *In re Lopez*, 75 B.R. 961 (Bankr.E.D.Pa.1987), *aff'd*, 82 B.R. 712 (Bankr.E.D.Pa.1988), holding that because plan did not relinquish property for foreclosure, proper valuation was fair market value without consideration of mortgage insurance).

Our holding today does not conflict with our recent decision *In re Mitchell*, 954 F.2d 557 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992), a case involving the valuation of the debtor's automobile. *Mitchell* concluded that the wholesale value rather than replacement cost should determine valuation. " '[W]hat is being valued is the creditor's "interest" in the collateral, not the debtor's interest.' " *Id.* at 560 (quoting Queenan, *Standards for Valuation of Security Interests in Chapter 11*, 92 Com.L.J. 19, 30 (1987)). As *Fischer* points out, however, *Mitchell* is consistent with our holding because it did not involve insurance or "any type of recourse agreement that would guarantee the creditor more than market value." *Fischer*, 136 B.R. at 827.

We find additional support for our holding in *Grubbs v. Nat'l Bank of South Carolina*, 114 B.R. 450 (D.S.C.1990), a case which involved automobile valuation but contained the additional factor of a recourse agreement. In *Grubbs*, the court noted that:

"The availability to such holder of recourse against third parties with respect to the claim should not affect the value attributed to the property.... The bankruptcy court must protect the holder of a secured claim only to the extent of the value of his interest in the estate's interest in the subject property. The court is not required to afford protection with respect to the creditor's contractual rights against third parties."

*Grubbs*, 114 B.R. at 452 (quoting COLLIER ON BANKRUPTCY ¶ 506.04[2], at 506–35 to 36) (ellipsis in original). Because we find no practical distinction between a recourse agreement and a mortgage guaranty in this context, we hold that mortgage insurance should not be calculated into the value of the secured claim.

## C. *Automatic Stay*

Lomas and FNMA argue that the district court erred in affirming the bankruptcy court's denial of their motion for relief from the automatic stay. First, they contend that relief should have been granted because they were not adequately protected. The district court erred by focusing on the mortgage insurance, they argue, because the test does not look to the value of the creditor's secured claim but only whether its interest in the property is protected. They then argue that because FNMA's interest was in the deed of trust which was covered by the insurance, the insurance should have been taken into account. Second, they contend that the Wieses had no equity in the property and had the burden to demonstrate that the property was necessary for them to effectuate the plan.

██ Whether to grant relief from the automatic stay for cause under section 362(d)(1) or (d)(2) is discretionary and reviewed for an abuse of discretion. *In re MacDonald*, 755 F.2d 715, 716 (9th Cir. 1985).

Section 362(d) provides that relief from an automatic stay may be granted:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Because we affirm the denial of Lomas' motion for relief from the automatic stay pursuant to section 1327(a), we need not apply section 362(d) to this case. Section 1327(a) states that:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such

creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a).

The Ninth Circuit BAP has held that the language of section 1327(a) binds the creditor to the provisions of the plan whether or not the creditor has objected to, accepted or rejected the plan. *Anaheim Sav. & Loan Ass'n v. Evans (In re Evans)*, 30 B.R. 530, 531 (Bankr. 9th Cir.1983). "An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing." *Id.* *Evans* further stated that "issues of adequate protection, lack of equity, and necessity for a successful rehabilitation of the Chapter 13 debtor [are] all res judicata as of the confirmation of the plan." *Id.* Similarly, we have held that "[o]nce a Chapter 13 plan is confirmed, all of the property of the estate vests in the debtor and creditors are precluded from asserting any other interest than that provided for them in the confirmed plan." *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 458 (9th Cir.1988) (citing 11 U.S.C. § 1327 (1982) and *In re Evans*, 30 B.R. at 531).

██ Therefore, because the issues involved in determining whether relief from the automatic stay were determined in the confirmation of the plan, and thus are res judicata, we hold that the bankruptcy court did not abuse its discretion by denying relief from the automatic stay and the district court correctly affirmed that decision.

## D. *Constitutional Issue*

██ Finally, Lomas argues that the unsecured portion of a mortgage lien constitutes a valuable property right that is protected by the Takings Clause of the Fifth Amendment. It argues that allowing modification of the unsecured portion of a creditor's claim constitutes lien avoidance and consequently violates the Takings Clause.

However, we need not reach the merits of this constitutional issue because Lomas failed to raise it both in the bankruptcy court and in the district court. Therefore, it has waived that issue and is precluded

from asserting it before this court. *See United States v. Wanless*, 882 F.2d 1459, 1462 (9th Cir.1989) (failure of Government to raise Fourth Amendment standing issue either in the district court or on appeal results in waiver).

### E. *Wieses' Cross–Appeal*

The Wieses' cross-appeal arguing that the district court erred by reversing the bankruptcy court and denying a deduction in the value of the secured claim for transaction costs and anticipated expenses for septic tank repairs. The district court held that because the property would be retained by the debtor it would be inappropriate to deduct transaction costs from the value. We agree.

■ As the Bankruptcy Appellate Panel stated in *Case*, "when the debtor plans to retain the property, selling costs should not be deducted from the fair market value of the property when valuing the creditor's interest in the property." *In re Case*, 115 B.R. 666, 670 (9th Cir.BAP 1990).

Intuitively, this makes sense and, as Lomas points out, is really only the flipside of its effort to figure mortgage insurance into valuation. Both arguments are attempting to base valuation upon a contingency that never took place. Consequently, the discussion of each issue complements the other.

As with the mortgage insurance issue, this question involves the interpretation of section 506(a). The contention put forth by the Wieses highlights what at first appears to be a conflict within the statute itself. The first sentence provides that "[a]n allowed claim ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...." 11 U.S.C. § 506(a). The second sentence provides that "[s]uch value shall

be determined in the light of the purpose of the valuation and of the proposed disposition or use of such property...." *Id.*

While this circuit has not addressed the question, the Fourth Circuit has discussed it under somewhat different facts in *Brown and Co. Sec. Corp. v. Balbus (In re Balbus)*, 933 F.2d 246 (4th Cir.1991).[2] *Balbus* determined that the only way to read the statute without effectively erasing the second sentence was to deduct sales costs only if there were an actual sale. *Id.* at 252. Acknowledging that there is a split in authority among lower courts, the *Balbus* court concluded that "[c]ourts which have focused on the intended use of the property have generally held that when a debtor retains the property, hypothetical costs should not be deducted." 933 F.2d at 251.

*Balbus* noted that initially courts had dwelled upon the first sentence and allowed deduction of such costs,[3] but that " 'a growing number of courts have rejected this line of reasoning, and have refused to deduct the sale costs in rendering a § 506 calculation unless the debtor's plan contemplates selling the property on the open market.' " *Id.* at 249–50 (quoting *In re 222 Liberty Assoc.*, 105 B.R. 798, 803 (Bankr. E.D.Pa.1989)).

The reasoning of the courts that focused on the first sentence was that section 506(a) "mandates" that the creditor's interest in the property controls the valuation. *In re Ward*, 13 B.R. 710, 712 (Bankr. S.D.Ohio 1981). This view has been roundly criticized:

> Such an interpretation would mean that the value should always be fixed at the amount which the creditor would receive upon foreclosure regardless of the purpose of the valuation and of the proposed disposition or use of the property.

§ 109(e). However, the legal issue, the statutory interpretation, is the same.

**2.** The facts in *Balbus* are different only because there the creditor was attempting to deduct the hypothetical costs of the sale when calculating the value of the debtor's real property in order to take the bankruptcy out of Chapter 13 and convert it to a Chapter 7 filing. If the deductions were taken into account, the amount of the secured debt would have been greater than allowed for Chapter 13 filings under 11 U.S.C.

**3.** See *In re Smith*, 92 B.R. 287 (Bankr.S.D.Ohio 1988); *In re Richardson*, 82 B.R. 872 (Bankr. S.D.Ohio 1987); *In re Claeys*, 81 B.R. 985 (Bankr.D.N.D.1987); *In re Parr*, 30 B.R. 276 (Bankr.N.D.Ala.1983).

*In re Courtright,* 57 B.R. 495, 497 (Bankr. D.Or.1986). *Balbus* agreed with this interpretation. 933 F.2d at 250–52.

*Balbus* adopted this second view also because of its reading of dicta found in *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). *Balbus,* 933 F.2d at 252. There, the Supreme Court stated:

> In subsection (a) of [§ 506] the creditor's "interest in property" obviously means his security interest without taking account of his right to immediate possession of the collateral on default.... *The phrase "value of such creditor's interest" in § 506(a) means "the value of the collateral."*

*Timbers,* 484 U.S. at 372, 108 S.Ct. at 631 (emphasis added). The *Balbus* court concluded that "the better view is that the secured creditor's interest may be valued for § 506(a) purposes without superimposing a foreclosure or other sale of the collateral where a disposition of the property is not reasonably in the offing." 933 F.2d at 251 (internal quotations omitted).

▪ We adopt the view of the Fourth Circuit in *Balbus* and affirm the district court's denial of transaction costs. First, as the *Balbus* court stated, to do otherwise would be to completely erase the second sentence of the statute. Second, it is contradictory to allow the debtor to keep the home but value the secured portion based upon a hypothetical sale of the residence. As one court put it, "the debtors cannot eat with the hounds and run with the hares." *Matter of Crockett,* 3 B.R. 365, 367 (Bankr. N.D.Ill.1980). Third, this is consistent with the legislative history of section 506(a) which reflects Congress's intent that the issues would be resolved on a "case-by-case" basis. Finally, it would be inconsistent not to calculate mortgage insurance into the value but to allow hypothetical transaction costs.

## CONCLUSION

The district court properly affirmed the bankruptcy court's order bifurcating Lomas' claim into secured and unsecured portions and allowing the debtors to modify the unsecured portion. We decline to reexamine *Hougland.* In addition, as the district court concluded, the bankruptcy court properly excluded the mortgage insurance from the valuation of the secured claim. We further conclude that the district court did not err in reversing the bankruptcy court's deduction of transaction costs from the value of the secured claim.

AFFIRMED.